835 A.2d 682

IN THE MATTER OF STEPHEN ANDREW
GALLO, AN ATTORNEY AT LAW.

Argued September 23, 2003—Decided December 5, 2003.

*Richard J. Engelhardt,* Counsel to the Director, argued the cause on behalf of the Office of Attorney Ethics.

*Justin P. Walder* argued the cause for respondent (*Walder, Hayden & Brogan,* attorneys; *Mr. Walder, K. Roger Plawker* and *Shalom D. Stone,* on the brief).

Justice ALBIN delivered the opinion of the Court.

Public confidence in our legal system demands that attorneys comply with the highest standards of professional conduct. Attorneys who are accused of violating those standards are subject to disciplinary review. The integrity of that process

requires a complete evaluation of the evidence and circumstances concerning a lawyer's alleged violation of the Rules of Professional Conduct. In this case, it appears that the Office of Attorney Ethics (OAE) and the Disciplinary Review Board (DRB) limited their review of respondent's conduct to his statements at a criminal plea hearing in which he admitted to committing four acts of sexual contact, involving three clients and one *pro se* party-opponent. This matter was referred to the DRB for the imposition of discipline based on respondent's criminal convictions. Respondent's scant admissions at the plea hearing, however, do not give context, background, or a sufficient basis for determining the full gravity of his alleged professional misconduct, particularly given the detailed claims advanced by his victims. Accordingly, we remand this matter to the DRB to convene a hearing before a Special Ethics Master to determine the full nature and extent of respondent's derelictions.

I.

Respondent was admitted to the New Jersey bar in 1993. On January 16, 2001, respondent was charged in a Bergen County indictment with one count of second-degree attempted aggravated sexual assault (*N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:14–2(c)(1)), five counts of fourth-degree criminal sexual contact (*N.J.S.A.* 2C:14–3(b)), and one count of criminal coercion (*N.J.S.A.* 2C:13–5(a)(7)) upon D.W., a matrimonial client; two counts of criminal sexual contact (*N.J.S.A.* 2C:14–3(b)) upon D.B., a matrimonial client; and one count of criminal sexual contact (*N.J.S.A.* 2C:14–3(b)) upon T.T., a *pro se* litigant, who was seeking a restraining order against one of respondent's clients. On September 5, 2001, respondent was charged in a one-count accusation with criminal sexual contact (*N.J.S.A.* 2C:14–3(b)) upon D.I., a matrimonial client. That same day, respondent entered into a plea agreement with the Bergen County Prosecutor's Office and pled guilty to four separate fourth-degree crimes of criminal sexual contact, one count for each of the four victims. Respondent admitted that, on separate occasions, he

placed his hands on the breasts of his clients, D.W. and D.I., without their consent; that he placed the hand of his client, D.B., on his groin without her consent; and that he placed the hand of the *pro se* litigant, T.T., on his groin without her consent. Those acts occurred in 1999 and 2000 and were directly related to respondent's practice of law. At the plea hearing, respondent was not required to explain the circumstances or context of his conduct beyond his bare admissions to nonconsensual sexual contact.

On October 26, 2001, the Honorable Donald R. Venezia, J.S.C. sentenced respondent to four concurrent five-year-terms of probation with the special conditions that he subject himself to random drug and alcohol testing and psychological counseling. He also was fined $4,000. The remaining charges against respondent were dismissed.

Pursuant to *Rule* 1:20–13(c)(2), the OAE filed a motion for final discipline directly with the DRB based on respondent's admissions of guilt in his criminal proceeding. In light of those admissions, the DRB voted to suspend respondent from the practice of law for three years for violating *RPC* 8.4(b). That RPC provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Six DRB members voted to make the suspension retroactive, while three members favored a prospective suspension. The DRB's decision only credited respondent's admissions at the plea hearing and did not acknowledge the victims' more detailed allegations concerning respondent's sexual misconduct. It appears that the OAE in prosecuting this matter, and the DRB in reviewing it, only considered undisputed facts— respondent's admissions. Before this Court, respondent's attorney took the position that only respondent's plea admissions, and not "unproven allegations," could be the basis of discipline. The attorney for the OAE did not take issue with that representation.

## II.

This Court has the constitutional responsibility of determining the fitness of lawyers to practice law in this State. *N.J.*

*Const.* art. 6, § 2. In order to fulfill that responsibility in the context of attorney discipline, we cannot ignore relevant information that places an attorney's conduct in its true light. Respondent and the grievants, as well as the public, are entitled to a disciplinary review process in which a full, undistorted picture is the basis for disciplinary sanctions.

As a result of the procedural posture of this case, there was no hearing to develop the allegations of the four victims that went beyond respondent's limited admissions. Although the record before the DRB included the pre-sentence investigation report, the plea and sentencing transcripts, and the briefs and attachments of the parties, respondent contends that the detailed allegations of the victims are hearsay statements that have not been tested in the crucible of an adversarial hearing and should not be accorded any weight. He further contends that this Court should be limited to his bare admissions in the criminal proceeding.

The imposition of discipline based on a record other than respondent's plea admissions would not be fair unless he has had the opportunity to confront his accusers and present testimony on his behalf. This Court, however, cannot turn a blind eye to the allegations of the victims that paint a sordid picture of betrayal of trust by an attorney who sexually preyed on vulnerable clients and an adversary *pro se* litigant. The sexual offenses are alleged to have occurred in the conference room of respondent's law firm and in two different courthouses. One of the grievants, the *pro se* litigant, claims that respondent molested her outside a Family Part courtroom where she was seeking the protection of a restraining order against his client. The claims of the other victims are equally shocking and disturbing. We are not in a position, however, to determine the veracity of those specific allegations and no such undertaking occurred before the DRB.

■ Our inquiry into respondent's behavior cannot be limited to the minimal admissions by respondent when he entered guilty pleas to criminal offenses. If respondent had never been charged criminally, the entire record would have been explored to deter-

mine the nature and context of his misconduct. Under those circumstances, the OAE and DRB would not have limited their inquiry to admissions made by respondent during the course of the administrative investigation. Likewise, had respondent been tried and acquitted of the charges, this Court would not have been bound by those findings because the standard in a criminal case is proof beyond a reasonable doubt, whereas a disciplinary proceeding is governed by the lesser standard of clear and convincing evidence. *In re Pennica*, 36 *N.J.* 401, 419, 177 *A.2d* 721 (1962); *see also id.* at 418, 177 *A.2d* 721 ("Acquittal of a member of the bar following trial of a criminal indictment is not *res judicata* in a subsequent disciplinary proceeding based on substantially the same charge or conduct."); *In re Rigolosi*, 107 *N.J.* 192, 526 *A.2d* 670 (1987) (disbarring attorney for bribery despite acquittal on all criminal charges); *In re Callahan*, 70 *N.J.* 178, 358 *A.2d* 469 (1976) (same); *In re Hyett*, 61 *N.J.* 518, 296 *A.2d* 306 (1972) (same). As there are no restrictions on the scope of disciplinary review in a case of an attorney who was not charged with a crime or who was acquitted of a crime, there is no commonsense or policy justification for imposing such restrictions when an attorney has pled guilty to a crime. This Court's disciplinary oversight responsibility cannot be curtailed by artificial impediments to the ascertainment of truth.

In many, if not in most, cases involving a criminal plea, there may be little need for us to look beyond the attorney's admissions at the plea hearing. In some cases, the offense itself will dictate the degree of discipline. Few would quarrel that a lawyer should be disbarred if he is convicted of such crimes as murder, aggravated sexual assault, or first-degree kidnapping. In other cases, the respondent will give a factual basis at the criminal plea hearing that will provide context and background to the offense and will not be at variance with the victims' claims. In still other cases, the respondent will not take exception to the contents of the presentence investigation report, which will contain sufficient details of the offense and the victims' claims to inform the disciplinary authorities of the true nature of the respondent's professional

misconduct. In this case, the sentencing judge never asked respondent's attorney whether he took exception to any portion of the pre-sentence investigation report. In all likelihood, in few cases where a guilty plea has been entered will a testimonial hearing be necessary to determine the full extent of an attorney's derelictions. A hearing is required here because the victims' allegations raise unanswered questions that bear on respondent's professional conduct.

## III.

■ As noted, the purpose of the disciplinary review process is to protect the public from unfit lawyers and promote public confidence in our legal system. In the first instance, a board of review, whether a District Ethics Committee, the DRB, or a hearing officer, must determine whether an attorney has engaged in an act of professional misconduct and, if so, the appropriate quantum of discipline. In fulfilling that mission, the details must be known, whether supportive or destructive of respondent's position. In light of the victims' allegations, a review of the full record is necessary to determine the fitness of respondent to practice law. As this Court stated in *In re Pennica, supra:*

> In the disciplinary matter, the primary purpose is not to punish the offender; it is to protect the public against members of the bar who are unworthy of the trust and confidence essential to the relationship of attorney and client; it is to ascertain whether the conduct of the attorney involved has demonstrated his unfitness to practice law, and if so to deprive him of his previously acquired privilege to serve as an officer of the court.
>
> [36 *N.J.* at 418–19, 177 *A.*2d 721 (citing *In re Introcaso,* 26 *N.J.* 353, 360, 140 *A.*2d 70 (1958)).]

*See also In re Makowski,* 73 *N.J.* 265, 271, 374 *A.*2d 458 (1977) ("The ultimate objectives of imposing a disciplinary measure are 'the protection of the public, the purification of the bar and the prevention of a re-occurrence.' "); *In re Rigolosi, supra,* 107 *N.J.* at 206, 526 *A.*2d 670 ("The purpose of a disciplinary proceeding, as distinguished from a criminal prosecution, is not so much to punish a wrongdoer as it is to protect the public from an untrustworthy lawyer.").

## IV.

■ We will not prejudge this case, but do feel a need to articulate certain principles. We have traveled a far way from tolerance of sexual misconduct in the workplace and in our profession. We recognize the psychological damage that can be inflicted on the victims of sexual abuse, who silently suffer and do not complain because they feel powerless to do so. The sexual abuse of a client is unacceptable in any profession and in any business setting, and cannot be tolerated in our profession, which holds as sacred the dignity of the individual.

■ Clients place not just money in trust with their attorneys; they place in trust their most intimate secrets, fears, and yearnings. Our Court has disbarred attorneys who have violated the economic trust of their clients. *In re Wilson*, 81 *N.J.* 451, 453, 409 *A.*2d 1153 (1979) (holding that "disbarment is the only appropriate discipline" when an attorney "knowingly used his clients' money as if it were his own"); *see also In re Magnola*, 175 *N.J.* 534, 816 *A.*2d 1040 (2003) (disbarring attorney for knowing misappropriation of funds and conduct involving dishonesty, fraud, deceit, or misrepresentation); *In re Gruber*, 177 *N.J.* 523, 831 *A.*2d 554 (2003) (same); *In re Riva*, 172 *N.J.* 232, 797 *A.*2d 874 (2002) (disbarring attorney for knowing misappropriation of escrow funds); *In re Untracht*, 174 *N.J.* 344, 805 *A.*2d 1208 (2002) (disbarring attorney for knowing misappropriation of trust funds; record keeping violations; and conduct involving dishonesty, fraud, deceit, or misrepresentation). Attorneys who commit sexual crimes against their clients take from their victims something more profound than money or goods; they take from their victims their dignity and psychological well-being. Such conduct is grossly incompatible with the standards of professionalism expected of attorneys. Attorneys who sexually molest their clients will be subject to severe disciplinary sanctions.

## V.

■ To repeat, the disciplinary review process is not limited to respondent's admissions in his criminal case. To end the inquiry

there, without fully examining the record, would be a dereliction of our constitutional responsibilities. We, therefore, remand this matter to the DRB to arrange for a hearing before a Special Ethics Master, with appropriate procedural safeguards, at which the veracity of the victims' claims and respondent's answers will be determined. The DRB will review the findings of the Special Ethics Master and render a decision as to final discipline. With a full record that includes credibility findings, this Court will then impose discipline on respondent.

*For remandment*—Chief Justice PORITZ and Justices LONG, VERNIERO, ZAZZALI, ALBIN, and WALLACE—6.

*Opposed*—None.

## ORDER

The Disciplinary Review Board having filed with the Court its decision in DRB 02–281, concluding that **STEPHEN ANDREW GALLO** of **HACKENSACK**, who was admitted to the bar of this State in 1993, and who has been temporarily suspended from the practice of law by consent since March 22, 2001, should be suspended from practice for a period of three years based on respondent's conviction of four counts of fourth-degree criminal sexual contact, in violation of *N.J.S.A.* 2C:14–3(b);

And the Court having concluded that in light of the allegations of the victims of respondent's offenses, it is necessary to establish a more detailed record on which to determine respondent's fitness to practice law;

And good cause appearing;

It is ORDERED that this matter is remanded to the Disciplinary Review Board to convene a hearing before a Special Ethics Master, who shall develop a detailed record in respect of respondent's alleged misconduct and shall report to the Disciplinary Review Board credibility assessments and findings based on the evidence presented; and it is further

ORDERED that the Disciplinary Review Board shall review the findings of the Special Ethics Master and shall file with the Court the decision of the Board as to final discipline; and it is further

ORDERED that **STEPHEN ANDREW GALLO** shall remain suspended from the practice of law until the further Order of the Court; and it is further

ORDERED that respondent shall continue to be restrained and enjoined from practicing law during the period of suspension and shall continue to comply with *Rule* 1:20–20.