868 A.2d 1011

IN THE MATTER OF E. LORRAINE HARRIS,
AN ATTORNEY AT LAW.

Argued November 9, 2004—Decided March 16, 2005.

596

*Walton W. Kingsbery, III,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Angelo J. Falciani* argued the cause for respondent.

Justice ALBIN delivered the opinion of the Court.

Respondent is a persistent violator of the Rules of Professional Conduct. Since becoming a lawyer, the number and nature of her transgressions have struck at the core values that define a lawyer's responsibility to clients, the court, and the profession. Basic honesty and a minimal level of competence are indispensable qualifications to practice law in this State. The pattern of respondent's conduct over a course of years makes clear that she does not possess those essential qualifications. When a lawyer's derelictions are so many and so grave, our paramount concern must be to protect the public and maintain the public's confidence in the integrity of the profession. Based on the record before us, we are constrained to enter an Order disbarring respondent.

## I.

Respondent E. Lorraine Harris was admitted to the New Jersey Bar in 1994. Since that time, she has amassed an extensive ethics record. In 1999, she received a temporary suspension lasting one month for potential misappropriation of escrow monies. *In re Harris,* 162 *N.J.* 2, 2, 737 *A.*2d 681 (1999). In 2000, she received a temporary suspension lasting nine days for failing to comply with a fee arbitration determination. *In re Harris,* 162 *N.J.* 189, 190, 742 *A.*2d 969 (2000). That same year, in an unpublished order respondent was admonished and in a published order reprimanded for failing to provide clients with a written basis for her fee and failing to provide a written contingency fee agreement. *In re Harris,* 165 *N.J.* 471, 472, 758 *A.*2d 152 (2000).

In 2001, with respect to respondent's representation of three separate clients, we suspended respondent for six months for lack of diligence, gross neglect, failure to safeguard client property, charging an unreasonable fee, failure to promptly deliver funds to a third party, record-keeping violations, false statements of material fact to a tribunal, failure to cooperate with disciplinary authorities, and misrepresentation. *In re Harris,* 167 *N.J.* 284, 284, 770 *A.*2d 1157 (2001). That same year, in an unpublished order, we

suspended respondent for an additional three months for lack of diligence, failure to expedite litigation, knowingly making a false statement of material fact to a tribunal, failure to cooperate with disciplinary authorities, and misrepresentation. In that last matter, respondent asked for and obtained several last-minute adjournments of a municipal court case. After failing to appear in court on the scheduled trial date, respondent then faxed a letter to the municipal court thanking it for granting her adjournment request when, in truth, she had neither requested nor received another adjournment. The manipulative dishonesty exhibited in that case is a leitmotif running through the current matters before this Court. Since this last suspension, which expired on March 4, 2002, respondent has not applied for reinstatement.

## II.

The current disciplinary violations before this Court arise out of respondent's derelictions in representing numerous clients and her failure to comply with the obligations placed on suspended attorneys pursuant to *Rule* 1:20–20. We are satisfied that the record supports by clear and convincing evidence the *de novo* factual findings of the Disciplinary Review Board (DRB) in each of the cases presented to us. We now review the recommendations made by the DRB in those cases.

## A.

On August 15, 2003, the DRB recommended that respondent be suspended for one year for her violation of the Rules of Professional Conduct arising out of five separate complaints that were heard by the District IV Ethics Committee (DEC). The DRB concluded that respondent's actions in those matters, taken together, evidenced a pattern of neglect, in violation of *RPC* 1.1(b).

### Brittingham Matter

Between 1995 and 1997, respondent represented Thomas J. Brittingham in a breach of contract suit filed in federal court. In

that matter, respondent failed to inform the client about filed motions and court orders; failed to return telephone calls and to communicate with the client; failed to return parts of the file to the client after her termination as counsel, despite a magistrate's order to do so; and generally mishandled the case. The DRB determined that respondent violated *RPC* 1.1(a) (gross neglect), *RPC* 1.3 (lack of diligence), *RPC* 1.4(a) (failure to communicate), *RPC* 1.16(d) (failure to comply with duties on terminating representation), and *RPC* 8.4(d) (conduct prejudicial to administration of justice).

### *Lisa Matter*

Between 1995 and 1999, respondent represented Joseph Lisa in a wrongful termination claim against his employer, Drexel University. Respondent was retained to file a claim with the federal Equal Employment Opportunity Commission (EEOC) on the client's behalf. Although respondent had 300 days in which to file the claim, she missed the deadline date and filed a late claim. As a result, the claim was dismissed as out of time and the client was denied a hearing before the EEOC. In addition, during a twenty-month period between 1995 and 1997 and a twenty-two month period between 1997 and 1999, respondent did not communicate in writing with her client. The client "resorted to certified mail in his dealings with respondent, because of his difficulty in reaching her." The DRB determined that respondent violated *RPC* 1.1(a) (gross neglect), *RPC* 1.3 (lack of diligence), and *RPC* 1.4(a) (failure to communicate).

### *Rochester Matter*

Respondent represented Lewis Rochester in a divorce matter in 1997. Respondent failed to deliver $2,500 in settlement funds to Rochester and to explain that she was keeping those funds as payment for her services. Respondent also did not send her client a final bill or a copy of the divorce decree. The DRB

determined that respondent violated *RPC* 1.4(a) (failure to communicate) and *RPC* 1.15(b) (failure to safeguard property).

### Cassidy Matter

█ Respondent represented Deborah Cassidy in municipal court in August and September of 1999 on a charge of driving while under the influence of alcohol. Respondent engaged in a "pattern of procrastination" in a "straightforward municipal court matter." She failed to resolve the case timely, made multiple "last-minute requests for adjournment," repeatedly failed to give the municipal court sufficient advance notice of her inability to attend hearings, and misrepresented that she had received no discovery, when, in fact, she had received at least a portion of it. Respondent also "failed to act responsibly in representing her client's interests," which resulted in the issuance of a warrant for her client's arrest. The DRB determined that respondent violated *RPC* 1.3 (lack of diligence), *RPC* 3.3(a)(1) (false statement of material fact or law to tribunal), *RPC* 8.4(c) (misrepresentation), and *RPC* 8.4(d) (conduct prejudicial to administration of justice).

### Eckrich Matter

█ Respondent represented her husband, Joseph C. Eckrich, on a traffic summons in a municipal court matter. Before respondent was retained, Eckrich failed to appear in municipal court, resulting in the issuance of a warrant for his arrest. Respondent succeeded in getting the warrant vacated. Thereafter, the municipal court sent notices to respondent and Eckrich advising them of the trial scheduled for September 15, 1999. Respondent and Eckrich did not appear on that trial date or notify the court that they would not appear. As a result, a second warrant was issued for Eckrich's arrest. Two weeks later, respondent was temporarily suspended ⋅ from the practice of law ˙for one month on an unrelated matter, and did nothing further on Eckrich's case until her reinstatement. Respondent claimed that she did not inform Eckrich about her suspension because she believed that she was

forbidden under *Rule* 1:20–20 from speaking to him about the case until she was reinstated.

The DRB dismissed as "contrived" respondent's explanation for not informing her husband about her suspension. The DRB also found that "[a]s a direct result of respondent's carelessness, a second warrant was issued for Eckrich's arrest and three court appearances were brushed aside." In this case, for no sound reason, a "simple traffic ticket" was "not resolved for almost a year." The DRB determined that respondent violated *RPC* 1.3 (lack of diligence), *RPC* 3.3(a)(1) (false statement of material fact or law to tribunal), *RPC* 8.4(c) (misrepresentation), and *Rule* 1:20–20(b)(11) (failing to advise municipal court and her clients of her suspension).

### B.

On March 12, 2004, the DRB recommended that respondent be suspended for six months for violating the Rules of Professional Conduct arising out of two separate complaints that were heard by the DEC.

#### *Rodriguez Matter*

In early 1996, respondent began representing Juan Rodriguez in a worker's compensation case as a result of a work-related injury to Rodriguez's hand. "Little happened in the case until December 1997," at which time Rodriguez received from his employer's insurance carrier a check for $6,212, "representing forty-nine weeks' pay reduced for a 20% permanent partial disability." Respondent had Rodriguez pay to her from those proceeds $1,578, an unearned fee that she was prohibited by statute from taking without court approval. For the next twenty-three months, respondent took little or no action, which resulted in the dismissal of the worker's compensation case in November 1999 for lack of prosecution.

A fee arbitration committee later entered an order that respondent was not entitled to any portion of the $1,578 paid to her by

Rodriguez. Nevertheless, respondent "steadfastly refused to abide by that committee's determination" and did not return the unearned fee. The DRB found that respondent "deceived" her client into paying the fee and rejected respondent's various "contrived" justifications for entitlement to it. In addition, respondent would not return to Rodriguez his case file, even after her termination as counsel.

The DRB determined that respondent violated *RPC* 1.3 (lack of diligence), *RPC* 1.16(d) (failure to comply with duties on terminating representation), *RPC* 3.4(c) (knowingly disobeying obligation under rules of tribunal), and *RPC* 8.4(c) (misrepresentation).

### *Hillenbrand Matter*

In November 1997, respondent began representing Richard Hillenbrand on a *disorderly persons offense* in municipal court. After he was found guilty, Hillenbrand retained respondent to file an appeal *de novo* in the Superior Court. Hillenbrand gave respondent $500 in payment for the cost of the trial transcript. The municipal court warned respondent on four separate occasions that the transcript payment was due; nonetheless, respondent failed to remit payment. As a result of respondent's inexplicable conduct, the appeal was dismissed. After reinstatement of the appeal, respondent was given an extension of time in which to file a brief, and yet she still failed to do so in a timely fashion, resulting in a second dismissal.

The DRB found that "[a]t every turn, despite numerous chances to correct her own deficient representation, respondent continuously 'dropped the ball,' " in this straightforward municipal court appeal. The DRB determined that respondent violated *RPC* 1.3 (lack of diligence).

### C.

On May 25, 2004, the DRB recommended a three-month suspension as a result of respondent's violation of multiple Rules of Professional Conduct in two separate matters. Those disciplinary

cases were brought before the DRB on a certification of default filed by the Office of Attorney Ethics (OAE). Due to respondent's failure to file an answer in response to the OAE's complaint, the allegations in the disciplinary complaint were deemed admitted under *Rule* 1:20-4(f).

### Comer Matter

In January 2001, Mary Ann Comer paid respondent a $1,420 retainer to represent Elliot Milton Valentine in a criminal matter. Comer later filed a request for arbitration in connection with that fee. Respondent did not file an answer.

The District I Fee Committee determined that respondent had provided little in the way of legal services in Valentine's case. The Committee awarded respondent $140 for the 0.8 hours of legal services provided to Valentine and ordered her to return the unearned portion of the retainer to Comer. Despite that order, respondent failed to return the unearned portion of the fee. The DRB determined that respondent violated *RPC* 3.4(c) (knowingly disobeying obligation under rules of tribunal) and *RPC* 8.4(d) (conduct prejudicial to administration of justice).

### Rule 1:20-20 Violations Matter

Respondent was suspended from the practice of law for six months, effective June 4, 2001, and for three months, effective December 4, 2001, and did not seek reinstatement thereafter. The DRB found that, while suspended, respondent did not comply with *Rule* 1:20-20, entitled "Future Activities of Attorney Who Has Been Disciplined or Transferred to Disability Inactive Status," including the provision requiring the filing of an affidavit of compliance within thirty days of the effective date of the suspension.

Respondent also did not follow the dictates of *Rule* 1:20-20(b)(4), which required her to remove all signs that might suggest that she maintained a law practice. As of June 21, 2001, respondent still displayed at her Bridgeton law office two signs, one at the building entrance that read, "Lorraine Harris, Attorney at

Law, By Appointment Only," and the other on the side of the building that read, "Lorraine Harris, Attorney at Law." Almost one year later, while respondent was still prohibited from practicing law, those signs were posted, except that one had been altered to read, "Lorraine Harris, Consulting Engineer." Respondent was not licensed as an engineer in the State of New Jersey. The DRB determined that respondent violated *RPC* 7.5(a) (false or misleading professional designation), *RPC* 8.4(c) (misrepresentation), and *RPC* 8.4(d) (conduct prejudicial to administration of justice).

### D.

On May 25, 2004, the DRB recommended that respondent be reprimanded as a result of her violation of the Rules of Professional Conduct arising out of a complaint that was heard before the DEC.

### *Clement Matter*

In November 1999, respondent filed on behalf of Mark Clement a federal civil rights and employment discrimination action against Public Service Electric and Gas Company, Inc. (PSE & G). The complaint alleged that Clement, a forklift operator at E.P. Henry Company, was subjected to racial discrimination by one of PSE & G's workers, who was on site at E.P. Henry.

PSE & G's counsel moved to dismiss Clement's complaint because respondent failed to allege a necessary jurisdictional component for a Title VII claim [1] and because PSE & G was not a state actor for purposes of a Section 1983 claim.[2] The court ordered respondent to show cause why the complaint should not be dismissed and sanctions imposed for filing a frivolous action. Respondent then filed an amended complaint alleging essentially

---

[1] 42 *U.S.C.A.* § 2000e–2.

[2] 42 *U.S.C.A.* § 1983.

the same facts as those in the original pleading. The court dismissed the complaint for failure to state a claim and imposed sanctions.

The DRB determined that respondent had engaged in "wishful thinking" rather than sound advocacy, and that she had no reasonable basis to believe that Clement had a legally sufficient claim entitling him to relief. The DRB determined that respondent violated *RPC* 3.1 (filing frivolous lawsuit).

### E.

On August 24, 2004, four members of the DRB recommended that respondent be suspended for one year as a result of her violation of the Rules of Professional Conduct arising out of a complaint heard by the DEC. One other member favored an indeterminate suspension, while the three lay members voted for disbarment.

### *Cuff–Staggs Matter*

Respondent represented Dianne Cuff–Staggs in a 1998 divorce action. Although respondent drafted and obtained a judgment of divorce for her client, the judgment misspelled her client's name and failed to mention an oral agreement between the parties regarding the payment of household expenses.

Seventeen months later, respondent filed a motion to enforce litigant's rights for payment of her client's household expenses. The family court found that motion to be "totally deficient." In support of that motion, respondent had submitted a document titled, "Plaintiff's Certification," which misspelled her client's first name in three different places, including on the signature line. Cuff–Staggs denied that she ever saw or signed that certification (presumably she would have corrected the misspellings of her name), and denied that she ever authorized respondent to sign the certification on her behalf. According to Cuff–Staggs, the motion requested relief from her ex-husband that she was not even seeking.

Respondent offered "three conflicting versions of the events surrounding Cuff[-Staggs]'s signature on the certification" to the OAE and DEC. The DRB concluded that respondent misrepresented to those ethics authorities that her client authorized her to sign the certification. Based on that course of conduct, the DRB found that "respondent lacked diligence, forged her client's name to a certification that she then filed with the court, and later lied to ethics authorities about the signing of the document." The DRB determined that respondent violated *RPC* 1.3 (lack of diligence), *RPC* 8.1(a) (knowingly making false statement of material fact in connection with disciplinary matter), and *RPC* 8.4(c) (misrepresentation).

### III.

Based on the DRB's findings of ethical violations in eleven separate matters, this Court issued an order to show cause why respondent should not be disbarred or otherwise disciplined. To summarize, the DRB found that respondent lacked diligence in seven matters; engaged in dishonest conduct, lacked candor, or engaged in conduct prejudicial to the administration of justice in seven matters; failed to properly communicate with her clients in three matters; was grossly negligent in two matters; did not take proper steps on termination of representation in two matters; did not take required actions by a suspended attorney in two matters; knowingly disobeyed the rules of a tribunal in two matters; used a misleading professional designation in one matter; failed in safekeeping property in one matter; and brought a frivolous case in one matter. The DRB also found that, when taken together, several of the matters displayed a pattern of negligence. In the past, respondent has been admonished, reprimanded, suspended for six months, and suspended for three months for violating the Rules of Professional Conduct, in six prior matters.

The OAE argues that respondent clearly has proven her unfitness to practice law by the number and seriousness of her past and present professional derelictions. Respondent replies that

she has not had a sufficient opportunity to show that she can
comply with the ethical norms expected of a lawyer. She points
out that in her solo practice days she did not have the guidance of
a seasoned member of the bar and that she has been suspended
since 2001.

This Court is charged with the responsibility of deter-
mining whether lawyers are fit to practice law in this State. *N.J.
Const.* art. VI, § 2, ¶ 3. We have the unenviable task of deciding
whether an attorney has violated the Rules of Professional Con-
duct and, if so, the proper measure of discipline. "[T]he purpose
of the disciplinary review process is to protect the public from
unfit lawyers and promote public confidence in our legal system."
*In re Gallo,* 178 *N.J.* 115, 122, 835 *A.*2d 682 (2003); *see also In re
Rigolosi,* 107 *N.J.* 192, 206, 526 *A.*2d 670 (1987) ("The purpose of a
disciplinary proceeding, as distinguished from a criminal prosecu-
tion, is not so much to punish a wrongdoer as it is to protect the
public from an untrustworthy lawyer." (citing *In re Pennica,* 36
*N.J.* 401, 418–19, 177 *A.*2d 721 (1962))). Another goal of the
process is to spur a disciplined attorney, who is redeemable, to
comply with the high standards that our profession demands.

The public will soon lose confidence in our legal system if those
who practice law in our courts are not honest and competent. The
reputation of the entire bar requires that all "attorneys comply
with the highest standards of professional conduct." *Gallo, supra,*
178 *N.J.* at 117, 835 *A.*2d 682. This Court has recognized that

> [m]embership in the [legal] profession is a privilege burdened with conditions.
> Some of the basic conditions are good moral character, a capacity for fidelity to the
> interests of clients, and for fairness and candor in dealings with the courts. Those
> conditions are not only prerequisite for admission to the bar, they are equally
> essential afterward. Whenever they are broken, the privilege is lost.
>
> [*Pennica, supra,* 36 *N.J.* at 433–34, 177 *A.*2d 721.]

The proper measure of discipline will depend on a number
of factors, including the nature and number of professional trans-
gressions, the harm caused by those transgressions, the attorney's
ethical history, and whether the attorney is capable of meeting the
standards that must guide all members of the profession. *See In*

*re Nigohosian,* 88 *N.J.* 308, 315, 442 *A.*2d 1007 (1982) (per curiam) ("The severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances.").

 Misconduct that breaches a fundamental and solemn trust, such as the knowing misappropriation of a client's funds, is itself sufficient to trigger automatic disbarment. *See In re Cavuto,* 160 *N.J.* 185, 195, 733 *A.*2d 1174 (1999) (holding that mere act of taking client's money without authority to do so requires disbarment and that "lawyer's prior unblemished character will not excuse misappropriation that was knowing and volitional" (citing *In re Noonan,* 102 *N.J.* 157, 159–60, 506 *A.*2d 722 (1986))). However, a string of lesser, yet serious, professional improprieties within a fixed time period compounded by a long, unrepentant ethical history will also demand severe discipline. *See, e.g., In re Zeitler,* 182 *N.J.* 389, 392–94, 400, 866 *A.*2d 171 (2005) (holding that disbarment was warranted based on misconduct in three separate disciplinary matters evidencing pattern of neglect when combined with lengthy history of ethical violations dating back almost thirty years); *In re Harris,* 131 *N.J.* 117, 117–18, 618 *A.*2d 852 (1993) (ordering disbarment of attorney for conduct in ten matters involving lack of diligence, gross neglect, failure to communicate, conduct involving dishonesty, deceit, or misrepresentation, failure to safeguard client or third party property, abandonment of clients, and failure to cooperate with ethics authorities); *In re Spagnoli,* 115 *N.J.* 504, 505, 520, 559 *A.*2d 1352 (1989) (disbarring attorney for " 'ethical violations spree' " that included pattern of neglect, gross negligence, lack of due diligence, failure to communicate with clients, failure to cooperate in disciplinary hearings, and failure to return files).

 In the five groupings of cases before us, the DRB has recommended a one-year suspension, a six-month suspension, a three-month suspension, a reprimand, and a one-year suspension. We agree with the three dissenting members of the DRB who believe that respondent has crossed a line. In their dissent, they

summarized the sad and hapless professional life of respondent, who

> in a relatively short, ten-year career, has proven to be a completely dysfunctional attorney who has no regard for the truth. Every aspect of respondent's law practice suffers from her delinquent conduct. Innumerable clients have complained to the ethics authorities about her actions: she has repeatedly taken retainers and performed little or no work, grossly neglected legitimate claims, and lied to the clients about their cases....
>
> ....
>
> ... [J]udges from municipal, state, and federal courts have complained about this attorney's incompetence and deceitful behavior in their courtrooms and in cases under their review. They have done so, almost universally, after having given respondent ample opportunity to correct deficiencies in her work or to bring a matter into compliance. Yet, respondent has been either unable or unwilling to do so.
>
> ....
>
> ... Truth has little meaning to this respondent—it is a pliable thing for her, to be worked until it fits her immediate needs. That view is unacceptable in an attorney, who is sworn to be truthful....
>
> ....
>
> Over the years that we have endured this respondent's excesses, no meaningful mitigation has ever been offered to explain or modify her bizarre behavior. How many times must we see her repetitive acts before we can say "enough is enough?"

The dissenting DRB members concluded that respondent was "beyond redemption" and recommended that she be disbarred. We also conclude that "[n]othing in the record inspires confidence that if respondent were to return to practice [her] conduct would improve." *In re Vincenti,* 152 *N.J.* 253, 254, 704 *A.*2d 927 (1998) (per curiam). Respondent's tenure as an attorney has been marked by incompetence, deceit, and disloyalty to clients, a number of whom have been victimized by respondent. Although we take note that she has made contributions to her community and church, we cannot chance another run by respondent as an attorney. The risk to the public is too great.

The record does not allow us to find that respondent is professionally salvageable. Ultimately, we are invested with the duty of protecting the public and preserving the integrity of the legal profession. For those reasons, we must disbar respondent.

## ORDER

It is ORDERED that **E. LORRAINE HARRIS** of **GIBBS-TOWN,** who was admitted to the bar of this State in 1994, and who has been suspended from the practice of law since June 4, 2001, and who remains suspended at this time, be disbarred and that her name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that **E. LORRAINE HARRIS** be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that all funds, if any, currently existing in any New Jersey financial institution maintained by **E. LORRAINE HARRIS** pursuant to *Rule* 1:21-6 be restrained from disbursement except on application to this Court, for good cause shown, and shall be transferred by the financial institution to the Clerk of the Superior Court, who is directed to deposit the funds in the Superior Court Trust Fund pending the further Order of this Court; and it is further

ORDERED that **E. LORRAINE HARRIS** comply with *Rule* 1:20-20 dealing with disbarred attorneys; and it is further

ORDERED that **E. LORRAINE HARRIS** reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

*For Disbarment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, and RIVERA–SOTO—6.

*Opposed*—None.