40 A.3d 723

IN THE MATTER OF KEVIN P. WIGENTON,
AN ATTORNEY AT LAW.

Argued November 30, 2011—Decided April 3, 2012.

Wefing, Judge, temporarily assigned, filed a dissenting opinion.

96

*Maureen G. Bauman,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Shalom D. Stone* argued the cause for respondent (*Walder, Hayden & Brogan,* attorneys; *Mr. Stone* and *Justin P. Walder,* on the brief).

PER CURIAM.

■ This disciplinary matter was commenced by a 2006 complaint filed by the Office of Attorney Ethics (OAE) charging respondent, Kevin P. Wigenton of Red Bank, who was admitted to the bar in this State in 1992, with two instances of knowing misappropriation of trust funds, six instances of knowing misappropriation of escrow funds, and representing the seller while serving as a real estate broker in the same real estate transaction. A 2007 amendment to the complaint, in pertinent part, added four additional instances of knowing misappropriation of client and escrow funds. The counts related to findings discovered as the result of an initial random compliance audit and a second audit, by the OAE. Both took place in the latter part of 2002, six years after respondent had commenced a solo law practice in 1996. Prior to that time, respondent was not engaged in a law practice under the supervision of other attorneys. Instead, he had continued, after graduation from law school and admission to the bar, to work exclusively within the corporation where he had been employed full-time while attending law school. We note at the outset that there is no claim of client harm involved in this matter. None was pled or even remotely presented during the wealth of evidence produced at the hearing on this complaint.

An extensive hearing record was developed and Special Master Neil H. Shuster, J.S.C. (ret.) ultimately recommended a four-month suspension based on the violations that he found to have

been proven by clear and convincing evidence. Most important was the Special Master's finding that respondent did not knowingly misappropriate either trust funds or escrow funds. Rather, in a painstaking analysis of the evidence, the Special Master found that respondent reasonably, but mistakenly, believed that he was entitled to the funds in issue in the misappropriations charges pled. Respondent's admittedly "terrible" recordkeeping practices were blamed by the Special Master as the progenitor of that mistaken belief, not a willful ignorance designed to camouflage a more serious intent to take funds to which respondent was not entitled. That critical finding led the Special Master to conclude that the OAE proved respondent had committed negligent misappropriation of funds. Recordkeeping violations and a conflict of interest also were found to have been proven by clear and convincing evidence.

The Disciplinary Review Board (DRB) exhaustively reviewed the evidential record, as well as the proposed findings and conclusions rendered by the Special Master, and reached the same conclusion, differing only with respect to the quantum of punishment suitable under the circumstances. In its ninety-nine page decision filed in this matter, the DRB concluded that respondent should be censured for violating *RPC* 1.15(a) (negligent misappropriation of client trust and escrow funds and failure to safeguard funds), failure to comply with attorney recordkeeping requirements, and committing a conflict of interest contrary to the direction in *Advisory Committee on Professional Ethics Opinion 514*, 11 *N.J.L.J.* 392 (Apr. 14, 1983), as well as *RPC* 1.7(b).

The OAE filed a petition for review seeking respondent's disbarment. We granted the petition for review and issued an Order to Show Cause. We have now reviewed the record and the parties' briefs, and had the benefit of oral argument. We are fully in accord with the DRB's assessment that the proofs against respondent demonstrate negligent, but not knowing, misappropriation. In our review of attorney-discipline matters, the seasoned judgment of the DRB is important to us, *see In re Kushner*, 101

*N.J.* 397, 403, 502 *A.*2d 32 (1986) (stating that "[w]e ordinarily place great weight on the recommendation of the Disciplinary Review Board" (citing *In re Rosen,* 88 *N.J.* 1, 3, 438 *A.*2d 316 (1981); *In re Mirabelli,* 79 *N.J.* 597, 602, 401 *A.*2d 1090 (1979))), and we have no quarrel with its assessment of the proofs marshaled in the record presented in this particular matter.

Indeed, we note with approval that both the Special Master and the DRB combed the testimony and documentary evidence, count by count, transaction by transaction, and concluded, in careful findings supported with explanation, that respondent reasonably believed he was entitled to the funds. There is no need to repeat that analysis. We emphasize only that the DRB's decision took into proper account the nature of respondent's recordkeeping deficiencies when it concluded: 1) that respondent reasonably believed that he had enough funds in his trust account; and 2) that he displayed, at worst, a woeful lack of knowledge of the true status of his accounts before disbursing legal fees and costs to himself, but not an intentional ignorance that cloaked a more nefarious intent. *See, e.g., In re Johnson,* 105 *N.J.* 249, 260, 520 *A.*2d 3 (1987) ("The intentional and purposeful avoidance of knowing what is going on in one's trust account will not be deemed a shield against proof of what would otherwise be a 'knowing misappropriation.'").

Indeed, the findings by the Special Master and DRB intertwined on those scores. Both concluded that respondent did not realize there was any shortage until his accountant, who was retained between the two audits by the OAE, found them, and both explained their reasons for concluding that respondent's specific recordkeeping errors led to his reasonable, but mistaken, belief that he was entitled, on specific occasions, to withdraw or deduct an incorrect amount from his trust account, or to deposit directly certain funds into his business account believing that his trust account contained sufficient amounts to settle client accounts' needs. Although his accounting methods were, as the DRB put it,

"grossly deficient," this was not a case in which a client or third party suffered. The DRB made it a point to note that

[the OAE's senior compliance auditor] acknowledged that, as to the real estate transactions referenced in the formal ethics complaint, all of the funds had been disbursed; the closing of title had proceeded in a timely fashion; all documents had been properly and timely recorded; and all mortgages, judgments, and liens had been properly satisfied.

Finally, the DRB concluded that there was a failure of proof of a $42,000 shortage in respondent's trust account, and we take no issue with that finding. It is supportable on this record.

In sum, the DRB found that the October 4, 2002, random audit that led to a lengthy give-and-take period in which respondent fully cooperated, was contrite, and did not conceal his improper recordkeeping practices, and a subsequent disciplinary action whose proceedings have cast a shadow over respondent's practice since February 2007, did not produce evidence that any shortage in respondent's trust account was caused by knowing misappropriation. The DRB concluded that the evidence led to findings of the existence of negligent misappropriation, poor recordkeeping, failure to safeguard funds, and conflict of interest. Because we agree with the DRB's assessment of the evidence, we find no benefit in repeating its detailed reasoning.

█ With respect to the appropriate discipline for the violations committed by respondent, the DRB concluded that a censure was warranted. The DRB explained its reasoning for imposing that quantum of discipline as follows:

Although respondent was not guilty of knowing misappropriation, he negligently misappropriated funds; failed to comply with recordkeeping requirements; failed to safeguard funds by placing [a client's] deposit in his personal account instead of his trust account, notwithstanding the fact that the funds remained intact; and was guilty of a conflict of interest.

The discipline for negligent misappropriation and recordkeeping deficiencies is usually a reprimand.

A reprimand may still result even if the attorney's disciplinary record includes either a prior recordkeeping violation or other ethics transgressions.

*　　*　　*

More severe discipline has been imposed when aggravating factors, such as prior discipline or more flagrant conduct, are present.

Here, respondent also violated Opinion 514 by serving as both realtor and attorney in a real estate transaction, thus engaging in a conflict of interest. Cases involving conflict of interest, absent egregious circumstances or serious economic injury to the clients, ordinarily result in a reprimand.

*    *    *

In the matter before us, there are numerous mitigating factors. Respondent contacted an accountant, before the audit occurred, to learn about the audit process. He took the following corrective measures: He bought a software program, which he has used continuously since that time, to keep track of his accounts and records; hired a bookkeeper; retained a CPA; changed his practice of preparing HUD-1 forms so that all of his legal fees are disclosed in the proper location; discontinued his practice of splitting deposits; obtained pre-printed deposit slips for his trust and business accounts; and instituted a tickler system. Respondent performs three-way reconciliations of his trust and business accounts every month and maintains detailed client ledger cards and case disbursements and cash receipts journals. He took an ethics class on trust accounts.

In addition, all of the transactions taking place during the audit period closed in a timely manner, all documents were recorded in a timely manner, and all mortgages, judgments, and liens were satisfied in a timely manner. During the audit period, respondent's trust account was never overdrawn and no checks were returned for insufficient funds.

Moreover, no client or third party suffered financial harm. Respondent cooperated with the OAE. No ethics grievances have been filed against him. He held an extraordinary number of public or community positions and engaged in *pro bono* services. He also submitted substantial evidence, both testimonial and documentary, by respected members of the bar and the community, as to his honesty, integrity, and high moral character.

We find one of the most persuasive mitigating factors to be the significant amount of time that has passed since these infractions took place. This ethics matter has proceeded at a slow pace, apparently through no fault of respondent, who, the OAE conceded, was cooperative. The audit occurred in 2002. The complaint was filed in 2006 and amended in 2007. The hearings took place in 2009. The events that are the subject of the complaint, thus, occurred nine to ten years ago. At oral argument before us, respondent's counsel alluded to the deleterious effect that the delay in processing this disciplinary matter has had on respondent's ability to obtain clients.

Nevertheless, despite the mitigating factors, we do not take respondent's conduct lightly. The special master properly considered, as aggravating factors, respondent's failure to understand his responsibilities under the *RPC* s and his complete lack of knowledge about proper recordkeeping and attorney account requirements. Given respondent's accounting background, his astonishing failure to observe even rudimentary recordkeeping procedures is a significant aggravating factor.

As previously noted, reprimands are usually imposed for negligent misappropria-
tion and recordkeeping deficiencies. In addition, conflicts of interest are ordinarily
met with reprimands. In this matter, although respondent's accounting back-
ground is an aggravating factor that could support the imposition of a suspension,
because of the substantial mitigation, particularly the significant passage of time,
we determine that, for the totality of respondent's conduct, a censure is the
appropriate quantum of discipline.
[ (citations omitted) ].

We are in synchronicity with the DRB's judgment that a censure is the proper quantum of discipline here. In addition to the DRB's reasoning, we add the following explanation for our agreement that a censure, rather than a suspension, is appropriate.

Were this a case of knowing misappropriation, there would be no distinction as to whether the funds misused were either trust or escrow funds for purposes of determining the quantum of discipline. Disbarment would be the penalty, as we clearly warned in *In re Hollendonner,* 102 *N.J.* 21, 28–29, 504 *A.*2d 1174 (1985). *See, e.g., In re Frost,* 171 *N.J.* 308, 323, 793 *A.*2d 699 (2002); *In re Gifis,* 156 *N.J.* 323, 355–56, 717 *A.*2d 406 (1998). But here, respondent's infractions involve negligent misappropriation of trust and escrow funds, and in matters involving negligent misappropriation, it is possible to find cases where a short suspension was deemed appropriate and others where no suspension was required. *See* Kevin H. Michels, *New Jersey Attorney Ethics,* § 44:4–2 at 1146–48 (Gann 2012) (citing examples of suspensions as well as reprimands for negligent misappropriation infractions). In the situation we find present here, we return to the oft-expressed purpose of the imposition of discipline on erring attorneys: to protect the public and to preserve public confidence in the bar. *See, e.g., In re Harris,* 182 *N.J.* 594, 609, 868 *A.*2d 1011 (2005); *In re Gallo,* 178 *N.J.* 115, 122, 835 *A.*2d 682 (2003). Punishment for retribution's sake is not the end goal of the attorney disciplinary system. *See In re Imbriani,* 149 *N.J.* 521, 530, 694 *A.*2d 1030 (1997) ("Retribution is not our objective."). That touchstone guides us and supports the imposition of a censure, and not any period of suspension, in this matter.

■ A significant period of time has elapsed since the audits that uncovered respondent's admittedly lax recordkeeping practices, which led to his failure to safeguard funds and negligent misappropriation charges. Those practices, once uncovered, have not been repeated. Respondent was cooperative during the investigation, contrite, and did not attempt to conceal his errant recordkeeping practices. Rather, respondent underwent educational programs and correction of his business and accounting practices such that no errors have been found since.

In past circumstances, we readily have recognized that the passage of time since an ethical infraction occurred can be a mitigating factor. *See, e.g., In re Alum,* 162 *N.J.* 313, 315–16, 744 *A.*2d 172 (2000); *In re Pena,* 162 *N.J.* 15, 26, 738 *A.*2d 363 (1999). Here the time that has elapsed, with educational improvement efforts by respondent in the interim, and the absence of any other audit problems since the ones that these charges address, inure to respondent's benefit in deciding the quantum of discipline and lead us to conclude that a suspension is not necessary to protect the public. While we sometimes disagree with the DRB's evaluation of the quantum of discipline appropriate to the circumstances, *see, e.g., In re Convery,* 166 *N.J.* 298, 308–09, 765 *A.*2d 724 (2001) (imposing six-month suspension for federal misdemeanor conviction, notwithstanding DRB recommendation of reprimand), the censure recommended is adequate discipline for these charges.

In sum, we conclude that this matter will be satisfactorily ended by censuring respondent for the violations found by the DRB and affirmed by this Court.

Judge WEFING (temporarily assigned), dissenting.

I write separately because I am unable to join my colleagues' conclusion that a censure is the appropriate measure of discipline for respondent. In support of their conclusion, my colleagues cite, among other reasons, the corrective measures respondent has taken, the fact that no client suffered harm, and the length of time

it has taken to resolve these proceedings. I do not find these factors persuasive, either singly or in combination.

As to the corrective measures taken by respondent, many are elemental steps that respondent should have assured himself were in place from the first day he opened his practice. It is inexplicable that one with the accounting and business background of respondent would fail to institute such measures.

That no client suffered a loss as a result of respondent's failure to follow elemental principles of recordkeeping is a matter of great fortune, both for respondent's clients and for respondent. In my judgment, such sheer fortuity does not mitigate the quantum of discipline for respondent's recordkeeping infractions.

Nor can I consider the passage of time a sufficient mitigating factor. My colleagues cite two cases for that principle: *In re Alum*, 162 *N.J.* 313, 744 *A.*2d 172 (2000), and *In re Pena*, 162 *N.J.* 15, 738 *A.*2d 363 (1999). In my judgment, the manner in which this Court referred to the passage of time in those cases is significantly distinguishable from the present matter. In those cases, the Court dealt with disciplinary charges that had been filed many years after the unethical attorney conduct occurred; the passages of time were not attributable to protracted disciplinary proceedings. In *Pena, supra,* the conduct at issue took place seven years before a grievance was filed, 162 *N.J.* at 20, 738 *A.*2d 363, and in *Alum, supra,* the conduct occurred eleven years earlier. 162 *N.J.* at 316, 744 *A.*2d 172. In neither case did we find that the length of time needed to conclude the disciplinary matter could serve as mitigation. In *Alum*, moreover, although we accounted for that eleven-year time span, it did not serve to step down entirely the quantum of discipline. Rather, the Court ordered that the respondent be suspended for one year but then suspended that suspension and placed respondent on probation for that period of time, conditioned on the requirement that respondent "perform legal services of a community nature consisting of the equivalent of one day per week." *Id.* at 316, 744 *A.*2d 172.

In my judgment, the nature of the recordkeeping infractions at issue in this matter mandates a short period of suspension for respondent in order to preserve public confidence in the bar. Thus, I must dissent.

## ORDER

It is ORDERED that **KEVIN P. WIGENTON** of **RED BANK,** who was admitted to the bar of this State in 1992, is hereby censured; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State, and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

*For censure*—Chief Justice RABNER, and Justices LaVECCHIA, ALBIN, HOENS and PATTERSON—5.

*For Suspension*—Judge WEFING (temporarily assigned)—1.