SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### John J. Robertelli v. The New Jersey Office of Attorney Ethics  (A-62-14) (075584)

**Argued February 1, 2016– Decided April 19, 2016**

**Rabner, C. J., writing for a unanimous Court.**

In this appeal, the Court considers whether the Office of Attorney Ethics (OAE) may investigate a grievance against an attorney alleging misconduct violating the Rules of Professional Conduct (RPCs) after the Secretary of a District Ethics Committee (DEC) has declined to docket the matter.

The following facts, setting the background of this matter, are derived from the complaint that the OAE filed with the District XIV Ethics Committee, and plaintiffs' complaint filed in the Superior Court. On March 10, 2007, a police car driven by a sergeant with the Oakland Police Department allegedly struck a pedestrian, Dennis Hernandez. Hernandez claimed that he suffered permanent injuries, and commenced suit against the Borough, the police department, and the sergeant. Plaintiffs, who are attorneys licensed in New Jersey, were employed by the law firm that represented the defendants in the lawsuit. In order to obtain information about Hernandez, plaintiffs directed a paralegal employed by the firm to search the internet. Among other sources, she accessed Hernandez's Facebook page. Initially, the page was open to the public. At a later point, the privacy settings on the account were changed to limit access to Facebook users who were Hernandez's "friends." The OAE contends that plaintiffs directed the paralegal to access and continue to monitor the non-public pages of Hernandez's Facebook account. She therefore submitted a "friend request" to Hernandez, without revealing that she worked for the law firm representing defendants or that she was investigating him in connection with the lawsuit. Hernandez accepted the friend request, and the paralegal was able to obtain information from the non-public pages of his Facebook account.

Hernandez learned of the firm's actions during discovery in the lawsuit, and objected to defendants' use at trial of the documents that the paralegal obtained from his Facebook page. He also filed a grievance with the District II-B Ethics Committee, asserting that plaintiffs violated the RPCs by contacting him directly through his Facebook page without first contacting his attorney. The Secretary of the District II Ethics Committee, with the consent of a public member, declined to docket the grievance, having concluded that the allegations, if proven, would not constitute unethical conduct. Hernandez's attorney then contacted the Director of the OAE (Director) and requested that the OAE review the matter and docket it for a full investigation and potential hearing.

After further investigation, the Director filed a complaint against plaintiffs with the District XIV Ethics Committee. Plaintiffs requested that the Director withdraw the complaint, contending that the OAE was precluded from proceeding after the DEC declined to docket the grievance. The Director refused to withdraw the complaint, and plaintiffs filed a complaint in the Superior Court to enjoin the OAE from pursuing the matter. The trial court dismissed the complaint, holding that the Supreme Court and the ethics bodies that it established have exclusive jurisdiction over attorney disciplinary matters. The Appellate Division affirmed the trial court's determination in an unpublished decision. This Court granted plaintiffs' petition for certification. 222 N.J. 15 (2015).

**HELD:** Consistent with the broad authority that the Rules of Court grant the Director and the important goals of the disciplinary process, the Director has authority to review a grievance after a DEC Secretary has declined to docket the grievance. The OAE may therefore proceed to prosecute plaintiffs' alleged misconduct.

1. Under the State Constitution, the Supreme Court has exclusive jurisdiction over the admission to practice and the discipline of attorneys. The Court has created several entities to assist in its disciplinary role, including the DECs, the OAE, and the Disciplinary Review Board (DRB). The system in its entirety is designed to foster a fair and effective process that enables the public to voice complaints about attorney behavior, empowers investigatory bodies to review and thoroughly investigate grievances, and gives attorneys an opportunity to respond to allegations of misconduct and defend themselves with vigor. The disciplinary system, structured in this fashion, promotes public

confidence in the legal system.  (pp. 6-8)

2.  The DECs and the OAE are the two entities that have the authority to investigate and prosecute grievances against attorneys licensed in New Jersey.  Each DEC has a Secretary, required to be a licensed attorney, who receives and reviews all grievances on behalf of the DEC.  The DRB sits as an intermediate appellate tribunal in disciplinary matters; its primary role is to review recommendations for discipline and appeals from findings of no unethical conduct.  Consistent with the constitutional mandate, the Supreme Court is the final arbiter of ethics and disciplinary matters.  (pp. 8-9; 12)

3.  The OAE and the Director have broad authority to administer the disciplinary system and investigate and prosecute allegations of attorney misconduct.  Under the Court Rules, the Director has discretionary authority to investigate any information coming to his attention, whether by grievance or otherwise, and also has exclusive investigative and prosecutorial jurisdiction in certain matters.  Disciplinary proceedings may also begin at the OAE, and a grievant may therefore raise an ethics complaint directly with the Director.  (pp. 10-11).

4.  Plaintiffs' complaint asks the Superior Court to restrain the OAE from taking any action in furtherance of the disciplinary allegations against them.  The Court holds that the trial court and the Appellate Division correctly found that the Superior Court lacked subject matter jurisdiction over this direct challenge to the attorney disciplinary process, and reiterates that the Supreme Court has exclusive responsibility in this area.  (pp. 14-16)

5.  Addressing the question presented in this matter, the Court rejects plaintiffs' contention that Rule 1:20-3(e)(6) bars the Director from taking further action to review allegations of unethical conduct and file a disciplinary complaint after a DEC Secretary has declined to file a similar claim.  The Court states that the Director's action in that event does not constitute an appeal from action by the DEC, which is not permitted by the Rule.  The Court further states that the Rule applies only to appeals to the DRB, rather than to further action by the Director.  (pp. 17-21)

6.  The Court finds that plaintiffs' interpretation of Rule 1:20-3(e)(6) to preclude further action by the Director is also contrary to the broad investigative and prosecutorial authority that Rule 1:20-2(b) vests in the Director, and the purpose of the disciplinary rules to protect the public and promote the thorough and fair investigation and defense of allegations of unethical conduct.  The Court further states that the Rules do not preclude further inquiry by the Director if a DEC Secretary declines to docket an important, novel issue as to which there is little guidance, or mistakenly declines to docket an allegation of egregious, unethical conduct.  The Court finds that the OAE's discretionary review of grievances that DEC Secretaries do not docket does not conflict with the goals of the Michels Commission, which was formed to examine and recommend changes to the attorney disciplinary system. (pp. 21- 27)

7.  The Court concludes that the Director of the OAE retains discretion when appropriate to review a grievance after a DEC Secretary has declined to docket it, but is not required to investigate or formally respond to requests from a grievant to pursue a matter that a Secretary has not docketed.  (pp. 27-28)

The judgment of the Appellate Division is **AFFIRMED.**

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA and SOLOMON, and JUDGE CUFF (temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.**

JOHN J. ROBERTELLI and
GABRIEL ADAMO,

Plaintiffs-Appellants,

v.

THE NEW JERSEY OFFICE OF
ATTORNEY ETHICS and CHARLES
CENTINARO,

Defendants-Respondents.


Argued February 1, 2016 – Decided April 19, 2016

On certification to the Superior Court,
Appellate Division.

Michael S. Stein argued the cause for
appellants (Pashman Stein, attorneys; Mr.
Stein and Janie Byalik, on the briefs).

Stuart M. Feinblatt, Assistant Attorney
General, argued the cause for respondents
(John J. Hoffman, Acting Attorney General,
attorney; Mr. Feinblatt and Susan M. Scott,
Deputy Attorney General, on the brief).


CHIEF JUSTICE RABNER delivered the opinion of the Court.

New Jersey has a robust disciplinary system designed to

address allegations of attorney misconduct and protect the

public.  The process relies on both a large group of dedicated

volunteers, who serve on local District Ethics Committees

(DECs), as well as full-time professionals employed by the Office of Attorney Ethics (OAE).

In this appeal, the Court considers whether the OAE may investigate a grievance after a DEC secretary has declined to docket the matter. We find that the relevant court rules permit the OAE to proceed, consistent with the broad authority the rules grant the Director of the OAE and the important aims of the disciplinary process. As a result, the OAE may continue to pursue allegations that plaintiffs, two New Jersey attorneys, violated the Rules of Professional Conduct (RPCs) when they allegedly directed a paralegal to "friend" an adverse, represented party on Facebook and gather non-public information about him.

I.

To recount the facts, we draw on the allegations in the OAE's pending complaint before the DEC and plaintiffs' complaint filed with the Superior Court. We make no findings about the accuracy of the factual allegations in either complaint.

On March 10, 2007, a police car driven by a sergeant with the Oakland Police Department allegedly struck a pedestrian, Dennis Hernandez. Hernandez claimed that he suffered permanent injuries and filed a lawsuit against the Borough of Oakland, the police department, and the sergeant.

2

Plaintiffs John J. Robertelli and Gabriel Adamo, both licensed attorneys in New Jersey, worked at the law firm that represented the defendants in the personal injury lawsuit. To gather information about Hernandez, plaintiffs directed a paralegal to search the Internet. Among other sources, the paralegal accessed Hernandez's Facebook page multiple times.

At first, the page was open to the public. At a later point, the privacy settings on the account were changed to limit access to Facebook users who were Hernandez's "friends." According to the OAE, plaintiffs directed the paralegal to access and continue to monitor the non-public pages, and she submitted a "friend request" to Hernandez. The paralegal did not misrepresent her identity, but she also did not reveal that she worked for plaintiffs' law firm and was investigating Hernandez.

Hernandez accepted the friend request. He learned about the firm's actions before trial when plaintiffs sought to add the paralegal as a trial witness and disclosed printouts from Hernandez's Facebook page and his friends' pages. Through his attorney, Hernandez objected to the use of the documents at trial. He also filed a grievance with the District II-B Ethics Committee on May 18, 2010, and asserted that it was a violation of the RPCs for plaintiffs to contact him directly through his Facebook page without first contacting his attorney.

3

Weeks later, on June 22, 2010, the Secretary of the District II Ethics Committee advised Hernandez in writing that she had reviewed the grievance and determined that the allegations, if proven, would not constitute unethical conduct. The Secretary considered only the face of the complaint and did not conduct an investigation. With the agreement of a public member of the Committee, the Secretary declined to docket the grievance.

Hernandez's attorney next sent a letter to the Director of the OAE on July 30, 2010. The letter recounted plaintiffs' conduct and offered some additional details not in the original grievance. The core allegations in both documents, though, were essentially the same. According to counsel, "[t]he misuse of the internet and social hosting webpages is nothing short of an end-run on telephone communications and/or written correspondence with clients represented by attorneys." For that reason, Hernandez's counsel made a "formal request" that the OAE "review the matter and have it docketed for a full investigation and potential hearing."

The Director, in turn, investigated the matter and, on November 16, 2011, filed a complaint against plaintiffs with the District XIV Ethics Committee. The complaint alleged that plaintiffs engaged in misconduct in violation of RPC 4.2 (communicating with a person represented by counsel); RPC 5.1(b)

4

and (c) (failure to supervise a subordinate lawyer -- charged only against Robertelli); RPC 5.3(a), (b), and (c) (failure to supervise a non-lawyer assistant); RPC 8.4(a) (violation of the RPCs by inducing another person to violate them or doing so through the acts of another); RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, and misrepresentation); and RPC 8.4(d) (conduct prejudicial to the administration of justice).

Plaintiffs filed an answer to the complaint and stated that they acted in good faith at all times and had not committed any unethical conduct. They explained, in part, that they were unfamiliar with the different privacy settings on Facebook.

Six months later, plaintiffs asked the Director of the OAE to withdraw the complaint. They argued that Rule 1:20-3(e)(6) and case law barred the OAE from proceeding after the Secretary decided not to docket the grievance.[1] The Director declined the request. He relied on the authority contained in Rule 1:20-2(b). He added that plaintiffs could file a motion to dismiss the complaint under Rule 1:20-5(d) if they believed the Director failed to state a cause of action or that the DEC lacked jurisdiction.

---

[1]  Rule 1:20-3(e)(6), discussed further below, provides as follows: "There shall be no appeal from a decision to decline a grievance made in accordance with this rule. An appeal may be taken from dismissal of a grievance after docketing in accordance with R. 1:20-3(h)."

5

Plaintiffs instead filed the instant complaint in Superior Court on September 13, 2012. They asked the court (1) to declare that the Director lacked authority to "review" the DEC's decision not to docket the grievance, pursuant to Rule 1:20-3(e)(6), and (2) to enjoin the OAE from pursuing the grievance.

The OAE moved to dismiss the complaint. The trial court concluded that because the Supreme Court and the ethics bodies it established have exclusive jurisdiction over attorney disciplinary matters, the Superior Court lacked authority to review or enjoin the acts of the OAE. The trial court therefore dismissed the complaint and added that plaintiffs could move for dismissal of the ethical charges "in the context of the pending disciplinary action."

The Appellate Division affirmed. It explained that, "[e]xcept for constitutional challenges, which plaintiffs did not raise, the Supreme Court has exclusive jurisdiction and authority over matters of attorney discipline, including the actions of those ethics bodies vested with the authority over attorney disciplinary proceedings."

We granted plaintiffs' petition for certification. 222 N.J. 15 (2015).

## II.

We begin with an overview of the disciplinary system to provide context for this appeal. The State Constitution

6

declares that "[t]he Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted." N.J. Const. art. VI, § 2, ¶ 3. This Court thus "has both the authority and obligation to oversee the discipline of attorneys." R.M. v. Supreme Court of New Jersey, 185 N.J. 208, 213 (2005). Our responsibility in this area is "exclusive." State v. Rush, 46 N.J. 399, 411 (1966).

The Court has created various entities to assist in its disciplinary role. Most pertinent to this case, they include the DECs, the OAE, and the Disciplinary Review Board (DRB). They are "arms of the [C]ourt," and a filing with them "is in effect a filing with the Supreme Court." Toft v. Ketchum, 18 N.J. 280, 284 (1955) (discussing county ethics and grievance committees); see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 433, 102 S. Ct. 2515, 2522, 73 L. Ed. 2d 116, 125 (1982). To guide attorneys and the public, the Court has also adopted rules that outline the attorney disciplinary process. See R. 1:20.

The system as a whole is designed to foster a fair and effective process that enables the public to voice complaints about attorney behavior, empowers investigatory bodies to review and thoroughly investigate grievances, gives attorneys an opportunity to respond to allegations and defend themselves with vigor, and, in the end, protects the public from unethical

7

conduct by unfit lawyers.  See In re Cammarano, 219 N.J. 415, 420 (2014).  Through those efforts, the disciplinary scheme helps "promote public confidence in [the] legal system."  In re Gallo, 178 N.J. 115, 122 (2003).

In general, two entities have the authority to investigate and prosecute grievances against attorneys licensed in New Jersey:  the DECs and the OAE.  R. 1:20-3; R. 1:20-2(b).  Unlike states that have a fully centralized disciplinary system, New Jersey uses a hybrid approach with a central OAE and local DECs in each vicinage.  A grievance may follow either of two paths; the more common course starts in the DEC, the other begins in the OAE.

Another body plays an important role in the review process. The DRB sits as an "intermediate appellate tribunal in disciplinary matters."  See R. 1:20; R. 1:20-15.  The Supreme Court, consistent with the constitutional mandate, is the final arbiter of ethics matters.  See R. 1:20-16.

The roles of each entity require a more detailed explanation.  The DECs "screen, investigate, prosecute, and hear disciplinary" matters.  R. 1:20.  Each vicinage has one or more DECs, which serve a "defined geographical area."  R. 1:20-3(a). DECs have no fewer than eight volunteer members, at least four of whom must be attorneys and two of whom must be laypeople. Ibid.

8

The Director, after consultation with the committee chair, appoints a Secretary for each DEC. R. 1:20-3(c). Secretaries must be licensed attorneys, and they receive and review all grievances on behalf of the DECs. R. 1:20-3(c)-(e). When the facts alleged, "if true, would constitute unethical conduct" under the RPCs, a Secretary must docket the grievance. R. 1:20-3(e)(1). On the other hand, when the facts alleged, "if true, would not constitute unethical conduct," the Secretary shall decline to docket the grievance, provided a public member agrees. R. 1:20-3(e)(3). No investigation is done in the latter case; the Secretary reviews only the face of the complaint.

It appears that DEC Secretaries decline to docket the majority of grievances submitted. A 1993 report from the New Jersey Ethics Commission[2] noted that as many as eighty percent of grievances were not docketed. Report of New Jersey Ethics Commission, at 75 (February 26, 1993) (Michels Commission Report). A Secretary's decision to decline to docket a grievance cannot be appealed to the DRB. See R. 1:20-3(e)(6).

---

[2] Chief Justice Wilentz appointed the New Jersey Ethics Commission in 1991 to examine the attorney discipline system. The Honorable Herman D. Michels, former Presiding Judge for the Administration of the Appellate Division, chaired the Commission, and it is known as the "Michels Commission."

When a Secretary dockets a grievance, the DEC chair assigns an attorney member to investigate the matter. R. 1:20:3(g)(1). After the investigator presents a written report and recommendation, the chair may file a complaint, R. 1:20-3(i)(3)(B), request that the Director approve an agreement in lieu of discipline for minor unethical conduct, R. 1:20-3(i)(2)(B)(i), or dismiss the charge, R. 1:20-3(h). If the chair decides to dismiss a grievance after an investigation, either the Director or the grievant may appeal the decision to the DRB. R. 1:20-3(e)(6); R. 1:20-3(h); R. 1:20-15(e)(1), (2).

The Court created the OAE in 1984, as part of "the increased centralization of the disciplinary system." See Kevin H. Michels, New Jersey Attorney Ethics, § 42:1 at 1062-63 (2016). The OAE is staffed by full-time professionals. Both the OAE and its Director have broad authority under the rules both to administer the disciplinary system and to investigate and prosecute allegations of attorney misconduct. See R. 1:20-2.

The Director, whom the Court appoints, has "all of the investigative and prosecutorial authority" of the DECs. R. 1:20-2(b). Under the rules, he has discretionary authority to "investigate any information coming to the Director's attention, whether by grievance or otherwise." R. 1:20-2(b)(2). The Director also has exclusive investigative and prosecutorial

10

jurisdiction in certain areas, including serious, complex, or emergent matters, R. 1:20-2(b)(1)(A), as well as any case the DRB or the Court assigns to the Director, R. 1:20-2(b)(1)(E). The Director can appeal to the DRB a decision by the DEC chair to dismiss a matter after investigation without the filing of any charges, or a decision to dismiss after a hearing. R. 1:20-15(e); R. 1:20-3(h).

Disciplinary proceedings may also begin at the OAE. A grievant can raise an ethics complaint directly with the Director. See R. 1:20-2(b)(2); Baxt v. Liloia, 155 N.J. 190, 211 (1998) (noting that attorneys can report unethical behavior either to OAE or local DEC to satisfy RPC 8.3(a) and "inform the appropriate professional authority").

When a DEC chair or the Director files a complaint after an investigation, the matter proceeds before a hearing panel of three DEC members, R. 1:20-6(a)(1), or a special master, R. 1:20-6(b)(3). Respondents receive written notice during the investigative phase under Rule 1:20-3(g)(2), and written notice of the hearing under Rule 1:20-6(c)(2)(A). They may appear at the hearing with counsel, cross-examine witnesses, and present evidence. Ibid. After the hearing, "[i]f the trier of fact finds that there has been no unethical conduct," the complaint is dismissed. R. 1:20-6(c)(2)(E). Once again, the grievant or Director may appeal that decision to the DRB. R. 1:20-15(e)(1),

11

(2). The panel or special master may also recommend an admonition, reprimand, censure, suspension, or disbarment. R. 1:20-6(c)(2)(E).

The DRB -- "the intermediate appellate tribunal in disciplinary matters," R. 1:20 -- is a nine-member body of lawyers and laypeople. R. 1:20-15(a). Its primary role is to review recommendations for discipline and appeals from findings of no unethical conduct. R. 1:20-15(e), (f). This Court reviews all recommendations for disbarment, R. 1:20-16(a), and may review any other determination by the DRB, R. 1:20-16(b).

## III.

Plaintiffs argue that the Superior Court had jurisdiction to decide the merits of this case. They contend that the matter called for an interpretation of certain court rules, which they claim falls within the general jurisdiction of the Superior Court even when a rule touches on attorney discipline. Plaintiffs maintain that their application was not an invitation for the trial court to resolve a disciplinary matter and therefore did not encroach on this Court's exclusive jurisdiction. In any event, plaintiffs argue that the question of subject matter jurisdiction is secondary now that their appeal is before this Court.

As to the merits, plaintiffs' central contention is that, under Rule 1:20-3(e)(6), the Director was not authorized to

12

consider an appeal of the Secretary's decision not to docket a grievance.  Plaintiffs claim that the letter the OAE reviewed from Hernandez's counsel was "tantamount to an impermissible appeal."

Plaintiffs assert that there is a conflict between the court rule that gives the Director discretion to investigate any grievance, R. 1:20-2(b)(2), and the rule that bars appeals from a Secretary's decision not to docket a grievance, R. 1:20-3(e)(6).  To resolve that tension, they urge the Court to prohibit the Director from unilaterally reviewing and reversing the DEC's decision.  For support, plaintiffs reason from related disciplinary rules and rely, in part, on the Michels Commission Report and on later amendments to the court rules.

The OAE, represented by the Attorney General, contends that the trial court properly dismissed plaintiffs' complaint. Because this Court has exclusive jurisdiction over attorney discipline matters, the OAE submits that the trial court could not entertain a direct challenge to the prosecution of an attorney ethics grievance.  According to the OAE, this lawsuit, at its core, is about a disciplinary case and not a dispute over the meaning of court rules.  As a result, the OAE contends that plaintiffs' arguments can and should be considered during the disciplinary proceedings.

13

In any event, the OAE maintains that the Director was well within his authority to evaluate and investigate the underlying allegations, even after the DEC Secretary declined to docket the grievance. The OAE relies on the Director's broad authority in Rule 1:20-2(b). The OAE rejects plaintiffs' reading of Rule 1:20-3(e)(6) and contends that the rule does not bind the Director, who does not act as an appellate body.

IV.

We first consider the issue of subject matter jurisdiction. Plaintiffs seek to prevent the OAE and its Director from prosecuting the disciplinary allegations against them. Their complaint specifically asks the Superior Court to restrain the OAE "from taking any action in furtherance of the disciplinary charges against them" and to "declar[e] that the OAE lacks jurisdiction to pursue the grievance." The trial court and the Appellate Division correctly found that the Superior Court lacked subject matter jurisdiction over this direct challenge to the attorney disciplinary process.

Subject matter jurisdiction involves "a threshold determination as to whether [a court] is legally authorized to decide the question presented." Gilbert v. Gladden, 87 N.J. 275, 280-81 (1981). When a court lacks subject matter jurisdiction, its authority to consider the case is "wholly and

14

immediately foreclosed." Id. at 281 (quoting Baker v. Carr, 369 U.S. 186, 198, 82 S. Ct. 691, 699, 7 L. Ed. 2d 663, 674 (1962)).

Under the State Constitution, this Court has jurisdiction over attorney discipline matters. N.J. Const. art. VI, § 2, ¶ 3. As noted earlier, the Court's responsibility in this area is exclusive. In re LiVolsi, 85 N.J. 576, 583 (1981) (citing Rush, supra, 46 N.J. at 411-12).

The Superior Court can consider challenges to the constitutionality of a disciplinary rule. In re Felmeister, 95 N.J. 431, 444 (1984). But the Superior Court lacks jurisdiction over the regulation of the Bar and matters that intrude on the disciplinary process. See LiVolsi, supra, 85 N.J. at 596-97 (finding no right of review of determination of fee arbitration committee, via prerogative writ action in Superior Court, because Constitution grants Supreme Court "plenary authority to regulate the Bar"); O'Boyle v. District I Ethics Committee, 421 N.J. Super. 457, 473-74 (App. Div.) (rejecting constitutional challenge to Rule 1:20-3(e)(6) and noting "[i]t would make little sense to allow the Superior Court, Law Division, to review a decision of a district ethics secretary" in light of language of rule and reasoning in LiVolsi), certif. denied, 208 N.J. 601 (2011); GE Capital Mortg. Servs., Inc. v. N.J. Title Ins. Co., 333 N.J. Super. 1, 2-3 (App. Div. 2000) (holding Fund

15

for Client Protection could "not be sued in Superior Court by a disappointed claimant").

We note that the Superior Court has on occasion interpreted disciplinary rules to resolve an issue in a non-disciplinary matter. See, e.g., Eichen, Levinson, & Crutchlow, LLP v. Weiner, 397 N.J. Super. 588, 598 (App. Div.) (interpreting Rules 1:20-19 and 1:20-20 to determine whether firm that received referrals from disbarred attorney was required to remit referral fees to attorney-trustee managing disbarred attorney's practice), certif. denied, 195 N.J. 418 (2008); State v. Stroger, 185 N.J. Super. 124, 131-33, 136 (Law Div. 1981) (interpreting confidentiality provision of former Rule 1:20-5 and denying motion to suppress evidence that DRB gave to prosecutor's office), aff'd, 97 N.J. 391, 413 (1984). In none of those cases, however, did the courts intervene in the operation of the ethics system or the discipline of an attorney.

Here, plaintiffs seek to bar the OAE from prosecuting a disciplinary matter. Their complaint attempts to interfere directly with the operation of the disciplinary process. Like the trial court and the Appellate Division, we therefore conclude that the Superior Court lacked subject matter jurisdiction.

Plaintiffs argue that the trial court and Appellate Division should have addressed what they perceive as a conflict

16

between the court rules.  Among other points, they contend that judges of the Superior Court are better-equipped to interpret the rules than the mix of lawyers and laypeople who serve on the DECs and DRB.  But the question of subject matter jurisdiction is one of authority, not expertise.  See Gladden, supra, 87 N.J. at 280-81.  In addition, plaintiffs' argument extends beyond the interpretation of a court rule; the relief plaintiffs seek goes to the heart of the disciplinary process.

We recognize, nonetheless, that this appeal raises an important question about the authority of the OAE Director and the functioning of the disciplinary system -- matters that fall squarely within the Court's constitutional charge.  If the case were to proceed through a decision by the DRB, the Court would then be able to review that determination.  R. 1:20-16(b).  Under the circumstances, we relax the court rules in the interest of justice to address the legal authority of the Director now.  See R. 1:1-2(a); see also State v. Luna, 193 N.J. 202, 211 (2007) (relaxing rules in interest of justice "[i]n light of the critically important question presented").

V.

We turn to the issue at the center of this appeal:  whether the OAE Director can review an allegation of unethical conduct and file a complaint after a DEC Secretary has declined to docket a similar claim.  In this matter, the DEC Secretary

17

believed that the allegation, if true, would not constitute unethical behavior. With the concurrence of a public member of the Committee, the Secretary declined to proceed.

Plaintiffs rely heavily on Rule 1:20-3(e)(6), which states, "[t]here shall be no appeal from" the Secretary's decision. They argue that the rule bars the OAE Director from taking further action. For several reasons, we disagree.

A.

We apply familiar canons of statutory construction to interpret the court rules. Hopewell Valley Citizens' Grp., Inc. v. Berwind Prop. Grp. Dev. Co., L.P., 204 N.J. 569, 578 (2011) (citing Wiese v. Dedhia, 188 N.J. 587, 592 (2006)); State v. Clark, 191 N.J. 503, 508 (2007). We look first to the plain language of the rules and give the words their ordinary meaning. Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ. of Bridgewater-Raritan Sch. Dist., Somerset Cty., 221 N.J. 349, 361 (2015); N.J.S.A. 1:1-1.

We also read the language of a rule "in context with related provisions so as to give sense to the [court rules] as a whole." Wiese, supra, 188 N.J. at 592; see also Shelton v. Restaurant.com, Inc., 214 N.J. 419, 438 (2013) ("Statutes that deal with the same matter or subject matter should be read in pari materia and construed together as a unitary and harmonious

18

whole." (quoting <u>In re Petition for Referendum on Trenton Ordinance 09-02</u>, 201 <u>N.J.</u> 349, 359 (2010))).

If the text of the rules is ambiguous, we can turn to extrinsic evidence, including committee reports, for guidance. <u>Cast Art Indus., LLC v. KPMG LLP</u>, 209 <u>N.J.</u> 208, 222 (2012) (quoting <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492-93 (2005)).

B.

We start with the plain language of <u>Rule</u> 1:20-3(e)(6) and conclude that, when read in context, it prevents grievants from appealing <u>to the DRB</u> a Secretary's decision not to docket a grievance. The rule, either by its express terms or when read alongside other rules, does not bar the OAE Director from acting.

The short rule has two sentences. The first sentence -- "[t]here shall be no appeal from a decision to decline a grievance made in accordance with this rule" -- does not specify where the forbidden appeal might lie. The second sentence reveals more. It declares that "[a]n appeal may be taken from dismissal of a grievance after docketing in accordance with <u>Rule</u> 1:20-3(h)."

<u>Rule</u> 1:20-3(h), in turn, states that if the DEC dismisses a grievance after an investigation, the Director and the grievant have "the right to appeal <u>to the Board</u> within 21 days as provided by <u>Rule</u> 1:20-15(e)(2)." (Emphasis added). <u>Rule</u> 1:20-

15(e)(2) likewise outlines the way to file a notice of appeal "with the Board" in certain instances. (Emphasis added). Viewed in context, the phrase "no appeal" at the outset of Rule 1:20-3(e)(6) refers to an appeal to the DRB, not the OAE.

If a DEC Secretary decides not to docket a grievance, Rule 1:20-3(e)(6) does not bar the OAE from evaluating the matter for another reason: a letter to the OAE is not an "appeal." The term "appeal," as ordinarily understood, is "[a] proceeding undertaken to have a decision reconsidered by a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal." Black's Law Dictionary 117 (10th ed. 2014); see also id. at 1514 (defining "appellate review" as an "[e]xamination of a lower court's decision by a higher court, which can affirm, reverse, modify, or vacate the decision").

To be sure, the OAE Director has certain administrative/ supervisory responsibilities over the DECs. The Director has the power to "recommend to the Supreme Court the appointment and replacement" of DEC members, R. 1:20-2(b)(13); to hire and discharge DEC Secretaries and recommend their compensation, R. 1:20-2(b)(12); to select members of hearing panels and approve volunteer investigators, R. 1:20-2(b)(17), (18); and to transfer disciplinary matters among DECs, R. 1:20-2(b)(7). If a DEC does

20

not resolve a grievance within one year of filing, the Director may assume jurisdiction over the matter. R. 1:20-2(b)(1)(D).

The Director, however, does not have the authority to override the decisions of the DEC -- the hallmark of appellate power. The Director cannot affirm, reverse, modify, or vacate decisions of the DEC. In fact, when the Director investigates and decides to prosecute a matter, as in this case, the OAE files a complaint either with the DEC, and presents its case to a DEC hearing panel, or with a special master. See Michels, supra, § 42:3-2 at 1073. In addition, as noted earlier, if the Director disagrees with certain DEC decisions, the Director may appeal them to the DRB. R. 1:20-3(h); R. 1:20-15(e)(1)(i), (ii). But he cannot reverse them on his own. The DRB, not the OAE, reviews DEC decisions on appeal. R. 1:20-15(e).

Viewed in that light, Rule 1:20-3(e)(6) protects the DRB from being overwhelmed with appeals. Under the rule, grievants cannot appeal to the DRB the hundreds of decisions that DEC Secretaries make each year to decline to docket grievances. Finality helps alleviate the burden on the DRB in that regard; the Director's discretionary authority to step in when appropriate does not undermine the DRB or add to its burden.

A narrow reading of the first sentence of Rule 1:20-3(e)(6) is also at odds with the broad authority the rules afford the Director. We try to interpret the disciplinary rules as a

21

"unitary and harmonious whole." Shelton, supra, 214 N.J. at 438. They confer on the Director "all of the investigative and prosecutorial authority of an Ethics Committee." R. 1:20-2(b). They also empower the Director to "investigate any information coming to the Director's attention, whether by grievance or otherwise, which, in the Director's judgment, may be grounds for discipline." R. 1:20-2(b)(2). The first sentence of Rule 1:20-3(e)(6) does not override those clear grants of authority.

In addition, plaintiffs' reading of Rule 1:20-3(e)(6) does not comport with the purposes of the disciplinary rules: to promote the fair and thorough investigation and defense of allegations of unethical conduct by attorneys, and to protect the public. This matter presents a novel ethical issue: whether an attorney can direct someone to "friend" an adverse, represented party on Facebook and gather information about the person that is not otherwise available to the public. No reported case law in our State addresses the question. Consistent with the goals of the disciplinary process, the court rules do not close off further inquiry if a DEC Secretary declines to docket an important, novel issue as to which there is little guidance, or mistakenly declines to docket an allegation of egregious, unethical conduct. The Director of the OAE, by virtue of the broader scope of his position, sees the breadth of issues raised throughout the State and is aware of

22

national trends.  The public is best served by a system that permits both volunteers in the DECs and professionals in the OAE to assess challenging ethical matters like the one presented in this case.  The Director's review, moreover, offers a mechanism to ensure that allegations of egregious misconduct are not mistakenly overlooked.

The approach that plaintiffs read into the rules would also lead to unusual results.  Plaintiffs contend that the OAE Director cannot review the letter from grievant's counsel in this matter because counsel sent the letter after the Secretary's decision, allegedly in violation of Rule 1:20-3(e)(6).  Even if plaintiffs' view had prevailed, nothing would bar the Director from investigating if the grievant had written to the Director first.  And if the grievant had written to both bodies at the same time, the Director could go forward regardless of the Secretary's decision.  Such disparate outcomes are hard to justify and would not sensibly serve the goals of the State's disciplinary system.

Finally, the court rules have a built-in override that can defeat attempts to enjoin the Director from proceeding.  Under Rule 1:20-2(b)(1)(E), the Director has the discretion and authority to investigate and prosecute "any case in which the Board or the Supreme Court determines the matter should be assigned to the Director."  As a result, even at this stage, the

23

Court could ask the Director to examine the novel and potentially serious ethical issue raised in this case.

## C.

Because the meaning of the rules is clear, we need not consider committee reports or other extrinsic aids. Shelton, supra, 214 N.J. at 429. They would not alter the outcome in any event.

Plaintiffs claim that the history of Rule 1:20-3(e)(6) reveals it was part of an effort to reduce backlog in the disciplinary system. They place great reliance on the report of the Michels Commission.

The Michels Commission's task was to evaluate the ethics system and recommend changes to make it "as effective, as efficient, and as responsive as possible." Michels Commission Report, supra, at 2. Among other findings, the Commission highlighted "an ever-expanding case load" and a growing backlog of disciplinary matters. Id. at 34, 37. The Commission also noted the corresponding growth in the number of licensed attorneys -- from 11,408 in 1970 to 47,564 in 1992. Id. at 47.

As part of a series of recommendations, the Commission encouraged the Court to restructure the disciplinary system and "provide for a central intake office for the receipt of all grievances against lawyers" in the OAE. Id. at 72. The Commission concluded that "statewide central intake" would

24

lessen delays, "provide meaningful assistance to grievants," promote consistency, and, in general, "present a 'friendlier face' to the public." Id. at 77.

The Commission made note of the following aspects of the existing docketing practice. First, DEC Secretaries declined to docket as many as eighty percent of cases, and although the Supreme Court had an "'open complaint' policy" that "allow[ed] a grievant to insist that his grievance be docketed and investigated," the Commission observed that, "in reality, that right is not well known." Id. at 75 n.85. Second, the Commission commented that "[t]here is currently no oversight of, or right of appeal from, dismissal of an undocketed grievance." Id. at 77 n.88 (emphasis added). In other words, neither factor was singled out as a reason for the pending backlog.

In 1994, the Court issued administrative determinations in response to the Michels Commission Report. Supreme Court Administrative Determinations Relating to the 1993 Report of the New Jersey Ethics Commission (July 14, 1994) (Administrative Determinations). The Court highlighted multiple concerns in its findings, including the need for more timely investigations, and the importance of "increased public involvement" in the disciplinary system to enhance accountability and public confidence. Id. at 1, 8.

To try to achieve the first aim, the Court added full-time professional investigators to three large DECs responsible for one-fourth of the State's caseload. Id. at 2. The Court also announced it would adopt time standards as goals for the completion of investigations, hearings, and other actions. Id. at 13, 26, 28. But the Court rejected the idea of a centralized intake office and retained the DECs and their volunteers as a key component of the intake and overall disciplinary process. Id. at 24.

To address the goal of greater public involvement, the Court "increased public participation in the decisions and work of the system." Id. at 2. In particular, the Court added substantially more public members to the DECs. Id. at 3, 18. It also expanded the members' role. Going forward, the Court decreed, DEC Secretaries could not screen out or dismiss a written grievance "without the concurrence of a public member." Id. at 14-15, 24. That new requirement, codified in Rule 1:20-3(e)(3), responded to the Michels Commission's call for "oversight" of the dismissal of undocketed grievances. See Michels Commission Report, supra, at 77 n.88.

The Court's Administrative Determinations did not address the other part of the Commission's observation -- that there was

26

no right to appeal from undocketed dismissals.[3]  Ibid.  By including that language in a new rule, Rule 1:20-3(e)(6), the Court in effect embraced a practice that already existed.

In short, both before and after the changes prompted by the Michels Commission Report, DEC Secretaries declined to docket the vast majority of grievances, and grievants had no right of appeal from those decisions.  It appears that the first sentence in Rule 1:20-3(e)(6), on which plaintiffs rely -- "[t]here shall be no appeal from a decision to decline a grievance" -- broke no new ground and was not a response to the backlog problem.  In any event, there is no basis to conclude that the OAE's discretionary review of grievances that Secretaries do not docket would conflict with the aims of the Michels Commission.

## VI.

For all of those reasons, we conclude that the Director of the OAE has authority under the court rules to review a grievance after a DEC Secretary has declined to docket it.  We anticipate that the Director will use that power sparingly to address novel and serious allegations of unethical conduct.  The Director is not required to investigate or formally respond to requests from grievants to pursue a matter a Secretary has not

---

[3]  The Administrative Determinations did comment on the right to appeal dismissals after an investigation or a hearing. Administrative Determinations, supra, at 24.

27

docketed.  But the Director retains the discretion to act when appropriate.

Such an approach reflects the traditional balance on which our strong system of attorney discipline rests.  We continue to rely on a corps of devoted volunteers and a smaller group of professionals who, working in tandem, have the necessary tools to investigate possible ethical lapses by attorneys.  To ensure the strength and efficiency of the disciplinary system, we encourage ongoing communication between the OAE and the DECs.

We affirm the judgment of the Appellate Division that the trial court lacked subject matter jurisdiction over plaintiffs' complaint.  We also find that the court rules empower the OAE Director to review an allegation of attorney misconduct if a DEC Secretary declines to docket a grievance.  The OAE may therefore proceed to prosecute the alleged misconduct in this case.


JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA and SOLOMON, and JUDGE CUFF (temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.

SUPREME COURT OF NEW JERSEY

NO. ___A-62___                            SEPTEMBER TERM 2014

ON CERTIFICATION TO ____Appellate Division, Superior Court____


JOHN J. ROBERTELLI and
GABRIEL ADAMO,

Plaintiffs-Appellants,

v.

THE NEW JERSEY OFFICE OF
ATTORNEY ETHICS and CHARLES
CENTINARO,

Defendants-Respondents.


DECIDED          April 19, 2016
_____Chief Justice Rabner_____  PRESIDING
OPINION BY _____Chief Justice Rabner_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRMED | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |