**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1389-25

DWAINE PERRY, STEWART
DEGROAT, JR., RICHARD
LOGAN and DENNIS DEFREESE,
individually and as members of the
TRIBAL COUNCIL OF
RAMAPOUGH LENAPE NATION
and RAMAPOUGH MOUNTAIN
INDIANS, INC.,

     Plaintiffs-Appellants,

v.

VINCENT MANN, MADELINE
BETANCOURT a/k/a MADELINE
ESCOBAR BROWN, TANYA
VAN DUNK, CARLA
ALEXANDER, AARON DAVIS,
JAMES ROSE, SAMUAL ROSE,
DANIEL DENNISON, PETER
DEGROAT, DORIS JENNINGS
and LAHOMA JENNINGS-HENZ,

     Defendants-Respondents.

_____

Submitted April 15, 2026 – Decided April 28, 2026

Before Judges Gummer and Vanek.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000178-25.

George J. Cotz, attorney for appellants.

Chiesa Shahinian & Giantomasi PC, attorneys for respondents (James Van Splinter, on the brief).

PER CURIAM

This appeal arises from an internal governance and election dispute within the Ramapough Lenape Nation (the Nation), an American Indian Tribe recognized by the State of New Jersey. Plaintiffs Dwaine Perry, Stewart DeGroat, Jr., Richard Logan, Dennis DeFreese, and Ramapough Mountain Indians, Inc. (RMI) challenge actions taken by defendants, purportedly in their capacities as members of the Tribal Council (the Council), concerning Perry's removal as Principal Chief.

On leave granted, plaintiffs appeal orders granting in part defendants' motion to dismiss and denying plaintiffs' motion for leave to file an amended complaint. Perceiving no error in the trial court's dismissal of the claims regarding the Nation's internal governance and conclusion the proposed amendment was futile, we affirm.

I.

We derive the following facts from plaintiffs' verified complaint and the documents attached to it. The Nation is an entity formally recognized by New Jersey as an "American Indian Tribe." See Press Release, Off. of the Att'y Gen., AG Grewal Announces Settlements with Two American Indian Tribes (Mar. 18, 2019), https://www.nj.gov/oag/newsreleases19/pr20190318b.html (announcing New Jersey's official recognition of the Nation as an American Indian Tribe). It consists of individuals of Native American descent who share a common tribal heritage and operate as a "community under one leadership or government." The Nation governs its affairs through the Council, which serves as its central governing body. The Principal Chief presides over the Council.

On April 30, 2004, the Nation adopted an amended set of bylaws establishing the Council, a governing body consisting of a "Principal Chief, three Band Chiefs, nine Tribal Councilors, one treasurer, and one Secretary." According to the bylaws, the Nation was formally known as RMI. The bylaws provide for the election of those officers by "voters of the Nation," who are described as "all [adult] registered tribal members." The bylaws require elections every three years. Under the bylaws, an elected official may be

3

"removed from office by a majority vote of the remaining members of the Tribal [C]ouncil after a hearing before the Tribal Council."

Plaintiffs assert that, in 2008, the Nation adopted a Constitution by "[t]ribal referendum" that "super[s]eded the [b]ylaws to the extent" of any inconsistencies. According to plaintiffs, the Constitution establishes a seven-member Council consisting of the Chief, three Clan Chiefs, and three Band Chiefs. It recognizes three clans – Wolf, Deer, and Turtle – and three Bands – Turkey, Waywayanda, and Marten – each of which elects a representative to the Council. The Constitution also requires elections every four years and permits removal of a Council member only on an affirmative vote of five-sixths of the other Council members after a hearing. Defendants dispute the 2008 Constitution was adopted and maintain the 2004 bylaws remain controlling.

During a May 24, 2025 Council meeting, defendant Daniel Dennison moved to remove Perry as Principal Chief "for a variety of reasons," including information contained in a report prepared by a Tribal Committee called the Financial Oversight & Integrity Committee (FOIC). Defendants Dennison, Carla Alexander, and others present who, according to plaintiffs, were not eligible to vote, including defendant Peter DeGroat, supported the motion. Plaintiffs Perry, DeGroat, Logan, and DeFreese voted against the motion. After

4

refusing to accept plaintiffs' votes, defendant Madeline Betancourt, who was the Council Secretary, declared the motion carried. Perry was served with notice of a hearing scheduled for June 1, 2025.

During the June 1, 2025 hearing, some or all of defendants met and voted to remove Perry from office, bar him from future office, and exclude him from Tribal affairs. They also designated defendant Vincent Mann as Principal Chief and themselves as the new Council, thereby effectively removing plaintiffs DeGroat, Logan, and DeFreese from office. Perry did not attend the hearing. According to plaintiffs, he had become ill and was in a hospital. According to a June 2, 2025 resolution adopted by the Council memorializing its decision, Perry had not submitted a formal request for a continuance of the hearing or documentation of an illness.

The Council served Perry with a June 2, 2025 letter, referencing a June 2, 2025 Official Notice of Final Determination and advising him that after "reviewing overwhelming evidence provided by" the FOIC, the Council had unanimously found him guilty of "[d]iverting donor funds intended for the Tribe," "[u]sing GoFundMe and event platforms with misleading references to the Ramapough name," "[c]ollecting unauthorized speaking fees and making public representations without Tribal Council approval," and "[d]efaming

5

Acting Chief Vincent Mann . . . ." The Council asserted those actions constituted "repeated and egregious breaches of fiduciary duty, ethical conduct, and the public trust" and violations of state and federal law as well as the bylaws. The Council demanded, among other things, that Perry "[c]ease all claims to any Tribal office or authority."

On August 7, 2025, plaintiffs filed a verified complaint and an application for an order to show cause. Plaintiffs sought a judgment: enjoining defendants from acting as the Nation's Council and exercising control over the affairs of RMI; declaring defendants' actions null and void; requiring defendants to account for expenditures of tribal and RMI funds and reimburse those funds; restoring plaintiffs to their prior positions; and awarding compensatory and punitive damages. Plaintiffs claimed, among other things that, during the May 24, 2025 meeting, defendants improperly had relied on the 2004 bylaws, allegedly superseded by the 2008 Constitution, to permit additional individuals to act as voting Council members. Plaintiffs pleaded six causes of action: defendants' June 1, 2025 actions were ultra vires and void (count one); defendants usurped control of RMI and tribal funds (count two); Perry incurred personal financial losses by having to finance this litigation (count three); and defamation and related tort claims specific to Perry (counts four through six).

6

The parties submitted certifications supporting and opposing plaintiffs' application for an order to show cause. After hearing argument on September 12, 2025, the court placed a decision on the record and issued an order denying plaintiffs' application. The court denied plaintiffs' subsequent motion for reconsideration in an October 20, 2025 order.

Defendants moved to dismiss the complaint pursuant to Rule 4:6-2(a) and (e), arguing the court lacked subject-matter jurisdiction to address the Nation's internal affairs and plaintiffs had failed to state a claim on which relief could be granted. Plaintiffs cross-moved for leave to amend the complaint. In the proposed amended complaint, plaintiffs included additional factual allegations but did not alter their causes of action. In particular, plaintiffs alleged the removal of DeGroat, Logan, and DeFreese did not conform to the Constitution or bylaws; defendants had not previously challenged the legitimacy or composition of the Council as it existed prior to the events at issue; and defendants' claim of appointment to the Council conflicted with a provision in the bylaws.

On November 7, 2025, the court heard argument and placed its decision on the record. The court dismissed count one with prejudice, holding it lacked subject-matter jurisdiction because the cause of action pleaded in count one

7

"clearly and directly related to the inter[-]governmental affairs of a recognized [N]ative American tribe . . . ." The court dismissed counts two and three without prejudice, finding plaintiffs had failed to plead a cognizable legal theory or sufficient supporting facts. The court permitted counts four, five, and six to proceed, concluding that those tort claims did not require impermissible interference with tribal self-governance. The court denied plaintiffs' motion to amend as futile given the court's dismissal of count one and transferred the remaining counts to the Law Division because plaintiffs did not seek equitable relief in those claims. The court entered a November 7, 2025 order denying plaintiffs' motion to amend and a November 14, 2025 order memorializing its ruling on the motion to dismiss.

Plaintiffs moved for leave to appeal the November 7 and November 14, 2025 orders. We granted the motion, affording the parties an opportunity to submit supplemental briefs. The parties declined that opportunity and relied on their motion papers. In their brief, plaintiffs challenge the dismissal only of count one, arguing the court erred in relying on federal law. They do not challenge the dismissal of counts two and three or the transfer of the remaining counts. Accordingly, we deem those issues waived and do not address them. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2

(App. Div. 2015) (finding "[a]n issue that is not briefed is deemed waived upon appeal").

## II.

We review de novo a trial court's decision granting or denying a motion to dismiss submitted pursuant to Rule 4:6-2.  See ACLU of N.J. v. Cnty. Prosecutors Ass'n of N.J., 257 N.J. 87, 100 (2024).  Thus, "we 'owe[] no deference to the trial court's legal conclusions.'"  Borough of Caldwell v. Cozzarelli Cirminiello Architects, LLC, 482 N.J. Super. 492, 498 (App. Div. 2025) (alteration in original) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)).  We assume the allegations in the pleadings are true and afford the pleading party all reasonable inferences.  Sparroween, LLC v. Twp. of West Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017).

Rule 4:6-2(a) permits a party to "raise the defense of 'lack of jurisdiction over the subject matter' by motion prior to filing any pleading."  Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156 (App. Div. 2012).  Whether subject-matter jurisdiction exists is "a threshold determination as to whether [a court] is legally authorized to decide the question presented."  Robertelli v. N.J. Off. of Att'y Ethics, 224 N.J. 470, 481 (2016) (alteration in original) (quoting

Gilbert v. Gladden, 87 N.J. 275, 280-81 (1981)).  It is well-established "a court cannot hear a case as to which it lacks subject matter jurisdiction . . . ."  Murray v. Comcast Corp., 457 N.J. Super. 464, 470 (App. Div. 2019) (quoting Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 65-66 (1978)).  Therefore, in the absence of subject-matter jurisdiction, "consideration of the cause is 'wholly and immediately foreclosed.'"  Francavilla v. Absolute Resols. VI, LLC, 478 N.J. Super. 171, 177 (App. Div. 2024) (quoting Gladden, 87 N.J. at 281).

"Indian tribes are 'domestic dependent nations' that exercise 'inherent sovereign authority.'"  Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 788 (2014) (quoting Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla., 498 U.S. 505, 509 (1991)) (internal quotation marks omitted).  Indian tribes are "subject to plenary control by Congress . . . ."  Commonwealth of Puerto Rico v. Sanchez Valle, 579 U.S. 59, 70 (2016).  However, "unless and until Congress withdraws a tribal power . . . the Indian community retains that authority in its earliest form" as a "self-governing sovereign political communi[ty]."  Ibid. (quoting United States v. Wheeler, 435 U.S. 313, 322-23 (1978)).

Indian tribes are also considered "'distinct, independent political communities, retaining their original natural rights' in matters of local self-

A-1389-25

government." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55 (1978) (quoting Worcester v. Georgia, 6 Pet. 515, 559 (1832)). Thus, "they remain a 'separate people, with the power of regulating their internal and social relations.'" Ibid. (quoting United States v. Kagama, 118 U.S. 375, 381-82 (1886)). "They have power to make their own substantive law in internal matters . . . and to enforce that law in their own forums . . . ." Id. at 55-56. Examples of "tribal power" include the "authority '[to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members.'" Nevada v. Hicks, 533 U.S. 353, 361 (2001) (alteration in original) (quoting Strate v. A-1 Contractors, 520 U.S. 438, 459 (1997)) (internal citations omitted).

Courts across the country have consistently recognized that internal tribal governance disputes fall outside the scope of state-court jurisdiction. See, e.g., Cayuga Nation v. Campbell, 140 N.E.3d 479, 486 (N.Y. 2019) (explaining "tribes have a fundamental, 'bedrock' right to self-govern," and, therefore, "internal tribal leadership disputes are . . . not cognizable in federal or state court" (quoting Cayuga Nation v. Tanner, 824 F.3d 321, 327 (2d Cir. 2016))); Healy Lake Vill. v. Mt. McKinley Bank, 322 P.3d 866, 875 (Alaska 2014) (concluding "the tribal election and membership dispute" is a matter "within the

11

'tribe's retained inherent sovereign powers'" (quoting <u>John v. Baker</u>, 982 P.2d 738, 751 (1999))); <u>State v. Bellcourt</u>, 937 N.W.2d 160, 171 (Minn. Ct. App. 2019) ("Minnesota state courts should [not] intervene in a matter of internal tribal governance." (alteration in original)); <u>Golden Hill Paugussett Tribe of Indians v. Town of Southbury</u>, 651 A.2d 1246, 1252 (Conn. 1995) (holding Connecticut "courts are powerless to intervene in the exercise of tribal self-government").

Plaintiffs contend "[t]he Ramapough-Lenape are not a federally recognized Tribal Nation" and fault the court for relying on federal law in concluding it did not have subject-matter jurisdiction over the internal governance claims pleaded in count one. However, plaintiffs concede New Jersey has "'recognized' the . . . Nation as a legitimate representative of its members and their interests as Native Americans." Given that recognition and consistent with rulings of other courts considering a tribe's right of self-governance, we come to the same conclusion the trial court reached regarding the dismissal of count one due to lack of subject-matter jurisdiction.

Plaintiffs contend the court should have decided this case based on caselaw about unincorporated associations, not caselaw about Native American tribes. We disagree. Unlike Native American tribes, unincorporated

12

associations are not "'distinct, independent political communities, retaining their original natural rights' in matters of local self-government." Santa Clara Pueblo, 436 U.S. at 55 (quoting Worcester, 6 Pet. at 559). "Indian tribes . . . are a good deal more than private, voluntary organizations." United States v. Mazurie, 419 U.S. 544, 557 (1975) (internal quotation marks omitted). But even applying law regarding unincorporated associations, dismissal was appropriate.

In general, "New Jersey courts are loathe to interfere with the internal management of an unincorporated, voluntary association." Danese v. Ginesi, 280 N.J. Super. 17, 23 (App. Div. 1995); see also Loigman v. Trombadore, 228 N.J. Super. 437, 450 (App. Div. 1988) (applying the same rule to "[n]on-profit corporate associations"). Courts have always afforded "[d]eference . . . to the internal decisionmaking process of private associations." Loigman, 228 N.J. Super. at 449. In other words, "courts recognize an association's right to adopt, administer and interpret its own rules without judicial intervention." Danese, 280 N.J. Super. at 23; see also Davidovich v. Isr. Ice Skating Fed'n, 446 N.J. Super. 127, 153-54 (App. Div. 2016).

Judicial intervention into a private association's affairs is justifiable in limited circumstances, but those circumstances do not apply here. See, e.g., Rutledge v. Gulian, 93 N.J. 113, 124 (1983) (Court rejects judicial intervention

in membership decision of fraternal organization when "membership was not necessary for the pursuit of [plaintiff's] profession"); Leeds v. Harrison, 9 N.J. 202, 215 (1952) (finding "judicial intervention is justifiable only where the complaining parties have suffered an invasion of their civil rights, of person or of property"); Cipriani Builders, Inc. v. Madden, 389 N.J. Super. 154, 165 (App. Div. 2006) (recognizing distinction "between membership decisions of private associations whose activities are primarily social or fraternal . . . and membership decisions of associations whose activities directly affect the economic interests of their members, such as professional societies and trade associations"). Accordingly, we affirm the November 14, 2025 order dismissing count one for lack of jurisdiction.

We turn briefly to plaintiffs' appeal of the order denying their motion for leave to file an amended complaint. According to plaintiffs, they "sought to amend to specifically include [d]efendants' deviation from the [b]ylaws in implementing their regime change." Given their acknowledgment that the purpose of the proposed amendment was to supplement the "regime change" allegations in count one, the court did not abuse its discretion in denying the motion for leave to amend following its dismissal of count one. See Hopson v. Cirz, 482 N.J. Super. 232, 263 (App. Div. 2025) (applying abuse-of-discretion

standard in reviewing an order denying a motion for leave to amend). Thus, we affirm the November 7, 2025 order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1389-25